THE PEOPLE OF THE STATE OF NEW YORK ex rel. CLINTON H. SMITH, Appellant, *v.* EDWARD M. HOFFMAN, as Adjutant-General of the State of New York, et al., Respondents.

1. NATIONAL GUARD — DETERMINATION OF MILITARY BOARD OF EXAMINATION IS REVIEWABLE BY WRIT OF CERTIORARI. A military board of examination, appointed pursuant to section 64 of the Military Code (L. 1898, ch. 212; L. 1899, ch. 240; L. 1900, ch. 746) to examine into the moral character, capacity and general fitness for the service of a commissioned officer of the National Guard, and upon the findings of which he may be removed from office (Const. art. 11, § 6), is not simply an agency to advise the governor, as commander-in-chief, of the officer's fitness to remain in the service, but is a judicial body, composed of officers acting as judges, whose action, under the provisions of the Code of Civil Procedure (§§ 2120 *et seq.*), is subject to review by the civil courts by a writ of certiorari; and, while the writ may be refused as a matter of discretion, it cannot be denied for want of power. The review authorized does not substitute the judgment of the civil court for that of the board upon the evidence or the merits, but inquires into the jurisdiction of the subject-matter, the exercise of authority in relation to the subject-matter according to law, the violation of any rule of law to the prejudice of the relator and the like.

2. FUNCTIONS OF BOARD ARE JUDICIAL. The board of examination, although its jurisdiction is different, so far as it extends having, under the statute, the same powers as courts of inquiry and general courts-martial, with the same organization and method of procedure, has the general powers of a court, with the right to investigate questions of fact relating in part to rights of property, to decide those questions upon the evidence taken and pronounce a judgment. It is not clothed with arbitrary discretion to act without evidence or against law, but is a body of military officers of high rank, each sworn to faithfully try and determine, according to evidence, and to administer justice according to law. These functions are not ministerial, executive or legislative, but are judicial in character.

3. JUDICIAL DETERMINATIONS OF MILITARY TRIBUNALS UNLESS EXCEPTED FROM REVIEW ARE REVIEWABLE BY WRIT OF CERTIORARI. The judicial determination of inferior tribunals and officers acting judicially under the authority of a statute may be reviewed under a common-law writ of certiorari, which is issued to correct errors of law affecting the property or rights of the parties and to test the validity of official action, judicial or *quasi*-judicial in character, and unless military tribunals organized under the militia statutes of the state are excepted from the general rule their judicial determinations are subject to review thereby.

4. DETERMINATIONS ARE NOT EXPRESSLY EXCEPTED FROM REVIEW EITHER BY THE CODE OF CIVIL PROCEDURE OR THE MILITARY CODE.  The judicial determinations of military tribunals are not expressly excepted from review either by the provisions of the Code of Civil Procedure relating to the right of certiorari or by the Military Code; they cannot adequately be reviewed by appeal; the latter Code authorizes no appeal therefrom. they are not made in an action or special proceeding (Code Civ. Pro § 2121); they are kept secret until published in orders as approved, modified or disapproved by the officer directing the investigation (Mil. Code, §§ 113, 114), and the appeal mentioned in section 2122 of the Code of Civil Procedure means one that can be brought, argued and heard as a matter of right and not a secret review of a judgment, the existence of which cannot be known to the defeated party until after the review has been made, especially in a case where it is not known until after the judgment has been executed.

5. DETERMINATIONS NOT EXPRESSLY, CANNOT BE IMPLIEDLY EXCEPTED BY THE COURTS.  The determinations of such tribunals not having been expressly, cannot be impliedly excepted from review, upon the ground that if civil courts were permitted to interfere with them the discipline of the National Guard might be injured; whatever may be the Federal rule as to a review of the action of regular army tribunals, there is, in times of peace, a wide distinction between the regular army of the nation and the militia of a state when not in service of the nation, for discipline which is ample for the latter will not answer for the former; moreover, the state militia is organized by statutes of the state, and the legislature under the limitations of the Constitution has power to regulate the entire subject, to invest boards of examination with such authority and to give the civil courts such power to review as it secs fit.  When, therefore, it issued a general command upon the subject of reviewing the action of inferior judicial tribunals and officers acting judicially and made certain exceptions thereto, the matter was exhausted and the courts have no power to add an exception relating to any tribunal which the legislature is presumed to have had in mind.

6. PARTIES TO WHOM THE WRIT SHOULD BE DIRECTED.  The members of a military board of examination, and the adjutant-general, as the custodian of its record and report, are the proper parties to whom the writ of certiorari should be directed; but the governor, whose action upon its findings is executive, is not a proper party.

*People ex rel. Smith* v. *D. yle,* 55 App. Div. 260, reversed.

(Argued February 27, 1901; decided April 16, 1901.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered January 29, 1901, which affirmed an order of Special Term dismissing a writ of certiorari.

The Supreme Court issued its writ of certiorari to the respondents, commanding them to return their proceedings concerning the examination, findings, removal from office and discharge of the relator from military service as major of the Seventy-first Regiment of the National Guard of this state. No return was made, but upon motion of one of the respondents the Special Term vacated and dismissed the writ upon the ground, as stated in the opinion, that their proceedings were not of a judicial character. The Appellate Division affirmed on the ground, as stated in its order, "that the court has no jurisdiction to review the findings of a board of examination organized under section 64 of the Military Code." From that order the relator appeals to this court.

*Alexander S. Bacon* for appellant. A board of examination is a court. The words "findings," "decision," "examination" and "testimony," contained in section 64, indicate the judicial character of the board. These alone are sufficient. (*Dibble* v. *Dimick,* 143 N. Y. 549 ; *McLoghlin* v. *N. M. V. Bank,* 139 N. Y. 514 ; *Babcock* v. *F. R. R. Co.,* 140 N. Y. 308 ; *People* v. *Beckwith,* 108 N. Y. 67 ; *People ex rel.* v. *Thompson,* 94 N. Y. 451.) If the board of examination exercised a judicial function, the accused would be entitled to counsel as a matter of strict constitutional right. (*Le Roy* v. *Mayor, etc.,* 20 Johns. 429 ; *People ex rel.* v. *Board of Police,* 39 N. Y. 506 ; *People ex rel.* v. *Board of Police,* 69 N. Y. 408 ; *People ex rel.* v. *Board of Police,* 72 N. Y. 415 ; *People ex rel.* v. *Board of Fire Comrs.,* 72 N. Y. 445.) As far as the papers before this court go, there was absolutely no evidence before the board of examination. A court of inquiry is not a judicial tribunal of any character, and its record was not available before the board for any purpose. (*W. B. Chester* v. *U. S.,* 19 C. C. Rep. 683.) The courts have inherent power to supervise and control a board of examination. (*People ex rel.* v. *Townsend,* 10 Abb. [N. C.] 169 ; *People ex rel.* v. *Van Allen,* 55 N. Y. 31 ; *Matter of Leary,* 30 Hun, 394; *State* v. *Harrison,* 34 Minn. 526 ; *Matter of Bracket,* 27 Hun, 605 ; *People ex rel.* v. *Rand,* 41 Hun, 529.)

1901.]     People ex rel. Smith v. Hoffman.     465

N. Y. Rep.]     Opinion of the Court, per Vann, J.

*John C. Davies, Attorney-General* (*Henry B. Coman* of counsel), for respondents.  A board of examination is not a court, within the meaning of section 6, article 1 of the Constitution; its functions are not judicial and its action cannot be reviewed upon certiorari. (Military Code, §§ 64, 91; Const. N. Y. art. 11, § 6; *People ex rel.* v. *Van Allen,* 55 N. Y. 31; *People ex rel.* v. *Hill,* 126 N. Y. 497; *People ex rel.* v. *Doyle,* 28 Misc. Rep. 411; 44 App. Div. 402.)

Vann, J.  For eighteen years the relator was a member of the National Guard, and for some time prior to June 6th, 1900, was major of the Seventy-first Regiment thereof.  On the 10th of May, 1898, as a member of that regiment, he entered the service of the United States for the Spanish war, and on the 15th of November following he was honorably discharged from such service, but still held his commission as major in the National Guard.

Subsequently there appeared in several daily papers, published in the city of New York, an elaborate statement signed by two captains of said regiment, which gravely reflected upon the conduct of the relator as an officer while in the service of the United States during the Cuban campaign.  The statement, in effect, charged him and another officer with cowardice and inefficiency at the assault on San Juan Hill, July 1st, 1898.  On the 10th of December, 1898, at his request, a court of inquiry was convened to investigate the charge, express its opinion upon the evidence and report what farther action, if any, was necessary.  The court examined many witnesses, made a full statement of the facts and reported that the conduct of the relator during said campaign "was neither military nor officer-like and that the same was to the prejudice of good order and military discipline."  It recommended that he should be tried by court-martial if there was "jurisdiction to try officers of the National Guard for offenses committed while in the service of the United States;" otherwise that he should be ordered before an examining board "to determine his

59

capacity and fitness for the service, and that the evidence taken by this court be referred to such board for its information."

The report was referred by the commanding officer of the National Guard to the judge advocate, who, after reviewing the evidence, reported that it sustained the findings of the court. He further reported that a court-martial could not be ordered to try the relator for violating "a duty which at the time the offense was committed was owing to the United States," but that there was jurisdiction to order him before a board of examination. The commanding officer forwarded these reports to the adjutant-general with his approval and recommended that the relator be ordered before a board of examination accordingly. The governor approved "the proceedings, findings and recommendation of the court of inquiry," and, "pursuant to the provisions of section 64 of the Military Code," ordered the relator "before a board of examination to examine into his moral character, capacity and general fitness for service in the National Guard as a commissioned officer."

The board was to meet May 17th, 1899, but owing to the delay caused by an alternative writ of prohibition, issued at the instance of the relator and finally dismissed, it did not meet until May 10th, 1900. (*People ex rel. Smith* v. *Doyle,* 28 Misc. Rep. 411; 44 App. Div. 402; 162 N. Y. 659.)

The relator was notified to appear before the board, and at the time and place appointed he appeared with counsel, whereupon, as stated by him in his petition and not denied by the respondents, the proceedings were as follows: After the members of the board and the stenographer had been sworn the relator stated, "I wish to be represented by my counsel, Colonel Alexander S. Bacon, of New York. He is here to represent me." General Oliver, who spoke for the board, thereupon stated in open session that the relator could not be represented by counsel. The relator said, "if the board has counsel I think I ought to have counsel," and General Oliver replied, "very well, it will be entered on the minutes that you requested counsel and that your request was denied." The

orders convening, adjourning and reconvening the board were
then read and the recorder produced the stenographer's
minutes taken before the court of inquiry and offered them
in evidence.    The relator said, "if that is to be used as evi-
dence on this examination I object.    You have not allowed
me counsel and I am not a lawyer, but I know that this is
something that ought to be objected to as being incompetent.
As I understand it, it is not acceptable as evidence before any
court or board."    The room was then cleared to consider the
objection, the relator and stenographer being sent outside.    In
about fifteen minutes an orderly informed the relator "that
he was wanted at the board room."    Upon trying to enter
the room he was met by the recorder, who said, "Major,
the board has adjourned," and, when asked to what time,
replied, "I do not know, but you will be notified."  The
relator then asked if he should return to New York or remain
in Albany, and the recorder replied, "I cannot tell, but you
will receive notice."    He inquired if he might go before the
board to make a short statement, and the recorder went inside
to consult the board, but immediately returned, saying, "no,
the board is adjourned and cannot hear you.    Anything you
wish to say can be said at the next session, of which due
notice will be sent you."    The relator thereupon returned to
the waiting room and an orderly brought him his hat and
coat, which had been left in the room where the board was
sitting.    He received no notice of any subsequent session, and
the board never met again to his knowledge.    No further
proceedings were had, unless in secret session, and he never
had any opportunity to be heard except as stated.    The next
he knew about the matter was on the 6th of June, 1900, when
he was served with a general order, issued by command of the
governor and signed by the adjutant-general, which, after
reciting that the board had reported adversely, discharged him
from the military service of the state.

The office held by the relator was of some pecuniary value,
but owing to his discharge he is no longer entitled to the
income therefrom.    He claims that he has been deprived of

property without due process of law, and that a shadow has been cast upon his name through the judgment of a military board, pronounced without a hearing or an opportunity to be heard. The only question before us is whether the civil courts can listen to his appeal, for, thus far, they also have refused to hear him, not in the exercise of discretion, but for the supposed want of power. It is claimed on the one hand that a board of examination, appointed pursuant to section 64 of the Military Code, is a judicial body composed of officers acting as judges, whose action can be reviewed by a writ of certiorari; and on the other, that it is simply an agency created to advise the governor, as commander-in-chief, in respect to the fitness of a commissioned officer to remain in the service, and that its proceedings are not open to review by the civil courts. The board is not a permanent body, and has no inherent power but only such as is conferred by the Constitution and statutes, to which we must turn in order to discover the nature of its functions.

Article 11 of the Constitution relates to the state militia, and section 6 thereof provides that "no commissioned officer shall be removed from office during the term for which he shall have been appointed or elected, unless by the senate on the recommendation of the governor, stating the grounds on which such removal is recommended, or by the sentence of a court-martial, or upon the findings of an examining board organized pursuant to law, or for absence without leave for a period of six months or more." The provision relating to an examining board is new, and has been in force only since January 1st, 1895, when the Revised Constitution went into effect.

The Military Code is an elaborate statute, consisting of twelve articles and many sections, providing for the organization and government of the militia of the state. (L. 1898, ch. 212; L. 1899, ch. 240; L. 1900, ch. 746.) The fourth article relates to commissioned officers, and section 64, which is a part thereof, is as follows: "The governor may, whenever he may deem that the good of the service requires it, order any com-

missioned officer before a board of examination, to consist of
not less than three nor more than five general or field officers,
*which is hereby invested with the powers of courts of inquiry
and courts-martial,* and such board shall examine into the
moral character, capacity and general fitness for the service, of
such commissioned officer, and record and return the testimony
taken and a record of its proceedings.   If the findings of such
board be unfavorable to such officer and be approved by the
governor, he shall be discharged from the service.   No officer
whose grade or promotion would in any way be affected by
the decision of such board, in any case that may come before
it, shall participate in the examination or decision of the board
in such case.   Failure to appear when ordered before a board
constituted under this section, shall be sufficient ground for
a finding by such board that the officer ordered to appear be
discharged."

A board of examination is not one of the four military
courts created, *eo nomine,* by article 7, called courts of inquiry,
general courts-martial, garrison courts-martial and delinquency
courts, but it has the powers of the two courts first named,
with the same organization and method of procedure.   While
its jurisdiction is different, it has the same power, so far as its
jurisdiction extends, just as the County Court has the power
of the Supreme Court upon the trial of an action that it can
try at all.

A court of inquiry may be ordered "to examine into the
nature of any transaction of or accusation or imputation against
any officer or soldier."   It has power to take evidence, make
findings of fact, and when required, to express an opinion
thereon.   (§ 92.)

General courts-martial have power to try commissioned offi-
cers for eighteen classes of offenses relating to their conduct
in the military service, such as disobedience of orders, neglect
of duty and the like, and by their judgment an officer may be
dismissed from the service, fined or reprimanded.   (§ 95.)

"Each military court" has "the same power to compel by
subpœna, by subpœna *duces tecum* and by attachment the

attendance of witnesses both civilian and military and the production of books, papers and documents and to punish for contempt a witness duly subpœnaed for non-attendance or refusal to be sworn or testify or to produce books, papers and documents as is possessed by the Supreme Court of this state." Commissions and subpœnas may be issued "in behalf of the people of this state, and on application in behalf of any person to be tried by such court." (§ 108.) Any member of the court may be challenged and the members are sworn "in the presence of the accused, * * * to faithfully try and determine according to evidence the matter before him, * * * and that he will duly administer justice according to the established rules of law for the government of the military forces of the state." (§ 109.)

Said courts are empowered to issue process, including writs and warrants, to the sheriff of any county or a constable of any town or city, who are required to execute the same. (§ 110.) They may commit to the common jail of the county in which their sessions are held, any person guilty of disorderly, contemptuous or insolent behavior in open court. (§ 111.) A judge advocate is required to attend courts of inquiry and general courts-martial, and " in all the courts provided by this chapter the accused shall have the right to the assistance of counsel." (§ 112.) They keep a record of their proceedings and pronounce sentence, which is delivered to the officer ordering the court, who may approve or disapprove thereof, reconvene the court and send back its findings or sentence for revision. (§§ 114, 115.) The members are protected from prosecution on account of the imposition or execution of any sentence or the execution of any warrant, writ or process issued by the court. (§ 116.)

Thus it is apparent that a board of examination, which is expressly given the powers of courts of inquiry and courts-martial with reference to the questions intrusted to it for decision, has the general powers of a court, with the right to investigate questions of fact relating in part to rights of property, to decide those questions upon the evidence taken and pro-

nounce a judgment.    It is not clothed with arbitrary discretion to act without evidence or against law, but is a body of military officers of high rank, each sworn to faithfully try and determine according to evidence, and to administer justice according to law.    These functions are not ministerial, executive or legislative, but judicial in character.    The words " testimony," " findings " and " decision," as used in section 64, indicate a trial before a judicial body, and the provision for judgment by default on failure to appear shows that the accused officer has a right to be heard.    The action of the board is upon a question arising between the people and the officer ordered before it, and results in a judgment based upon evidence.    The power, the procedure and the result are appropriate only to an impartial tribunal, exercising judicial power, for the statute is carefully drawn to secure disinterested men who are to decide the issues according to the testimony. " When    *    *    *    the law requires a judicial determination to be made, such as the decision of a question of fact    *    *    * the duty is regarded as judicial.    *    *    *" (*People ex rel. Harris* v. *Commissioners Land Office*, 149 N. Y. 26, 31.)    The power to hear a controversy and decide it is a judicial power, and whether exercised by a court or by a board of examination, the members act as judges, as we think the members of the board in question acted, both in form and in fact.    It was not their duty to advise the governor but to make an adjudication, which was essential in order to enable him to remove the relator from office.    An officer may be removed *by* the sentence of a court-martial, or *upon* the findings of an examining board, the former executing itself and the latter requiring an executive order.    (Const. art. 11, § 6.)    With all his power as commander-in-chief the governor cannot remove a commissioned officer of the National Guard in time of peace without the findings of an examining board, except for absence without leave, although the senate may remove upon his recommendation.    When judgment of removal is pronounced by a court-martial, it takes effect *ex proprio vigore*, upon the simple approval of the governor, without further action on his part.

The Constitution surrounds every commissioned officer with these safeguards against the exercise of arbitrary power and protects him until he is adjudged guilty either of an offense cognizable by a court-martial, or of a want of moral character, capacity or general fitness for the service, cognizable by a board of examination.

Section 64 does not relate to the retirement or discharge of officers upon reaching a certain age, or becoming disabled, unfit or incompetent and thereby incapable of performing their duties. Such cases depending on physical condition rather than on moral character, are provided for by section 63, which requires that a surgeon shall aid in the investigation there provided for. The order for the trial of the relator was specifically made under section 64, which, as well as the order itself, limits the investigation and decision to moral character, capacity and general fitness for the service. The board was required to take the evidence offered by the people and the relator and after hearing both sides determine the question submitted to them by the order under the statute. We regard their powers, duties and determination as judicial in nature, although there may be wide latitude of procedure, so far as form is concerned. As an examining board has the same power to try and decide as a court-martial, although for different offenses, and its judgment may be the sole authority for the removal of a commissioned officer elected or appointed for life, if the judgment of a court-martial can be reviewed upon certiorari, the determination of a board of examination can be reviewed in the same way.

It is well established that the judicial determinations of inferior tribunals and officers acting judicially under the authority of a statute, may be reviewed under a common-law writ of certiorari, which is issued to correct errors of law affecting the property or rights of the parties, and to test the validity of official action, judicial or *quasi*-judicial in character. (*People ex rel. Steward* v. *Bd. of Railroad Commissioners*, 160 N. Y. 202; *People ex rel. Loughran* v. *Bd. of Railroad Commissioners*, 158 N. Y. 421, 428; *People ex rel. Burnham* v.

1901.]     People ex rel. Smith *v*. Hoffman.     473

N. Y. Rep.]        Opinion of the Court, per Vann, J.

*Jones*, 112 N. Y. 597 ; *People ex rel. Corwin* v. *Walter*, 68 N. Y. 403, 408.)   Unless military tribunals are excepted from the general rule their judicial determinations are subject to review by means of this ancient and important writ.   They are not expressly excepted either by the Military Code or the Code of Civil Procedure.   Section 2120 of the latter provides that the writ may be issued either when expressly authorized by statute or when authorized by the common law and not expressly forbidden by statute.   The limitations placed by the next two sections upon the power thus conferred do not apply to the case in hand, for the determination in question was not made in a civil action or proceeding and cannot adequately be reviewed by appeal.   No appeal is authorized by the Military Code, and the judgments of all military tribunals are kept secret until published in orders as approved, modified or disapproved by the officer directing the investigation.   (Mil. Code, §§ 113, 114.)   The appeal mentioned in section 2122 of the Code of Civil Procedure means one that can be brought, argued and heard as a matter of right and not a secret review of a judgment, the existence of which cannot be known to the defeated party until after the review has been made, and in such a case as this, not until after the judgment has been executed.

It may be claimed, however, that the determination of military tribunals, although not expressly excepted from the provisions of the Code relating to the right of certiorari, are impliedly excepted, because if civil courts were permitted to interfere with the judgments of military courts the discipline of the National Guard might be injured.   There is force in this argument, which is confirmed to a certain extent by the decisions of the Federal courts relating to the regular army, and by some, but not by all, writers on military law.   The subject, however, is treated with reference to a standing army rather than the militia of the various states.   (*Dynes* v. *Hoover*, 61 U. S. 65, 81 ; *Ex parte Milligan*, 71 U. S. 2 ; *Johnson* v. *Sayre*, 158 U. S. 109 ; 1 Winthrop's Mil. Law, 55 ; De Hart's Mil. Law, 226 ; Maltby's Treatise on Courts-Martial, 151, 158 ;

O'Brien's American Mil. Law, 222 ; Davis' Mil. Law, 6.)
There is a conflict of authority between the courts of the dif-
ferent states as to the right of the civil courts to review the
judgments of military tribunals. (*Durham* v. *U. S.*, 4 Hayw.
[Tenn.] 54 ; *State* v. *Davis*, 4 N. J. L. 311 ; *Ex parte Dun-
bar*, 14 Mass. 393 ; *Re Contested Election*, 1 Strobh. [S. C.]
190 ; 4 Encyclo. Pl. & Pr. 40.) The courts of England
review such judgments, but cautiously, as the subject requires.
(*Grant* v. *Gould*, 2 H. Black. 69, 101 ; *In re Mansergh*, 1
Best & Smith, 400 ; 1 Winthrop M. L. 57 ; *In re Poe*, 5
Barn. & Ad. 681.)

Confining the discussion to times of peace, as in time of
war military necessity may sanction the temporary exercise of
almost any power to save the state, there is a wide distinction
between the regular army of the nation and the militia of a
state when not in the service of the nation, for discipline
which is ample for the latter will not answer for the former.
A member of the state militia belongs to civil life, has a civil
avocation, and only occasionally engages in the exercise of
arms. A member of the United States army, on the other
hand, has no employment except that of a soldier and arms
constitute the business of his life. Hence, more rigid rules
and a higher state of discipline are required in the one case
than in the other.

Moreover, the state militia is organized by statutes of the
state, and the legislature, under the limitations of the Consti-
tution, has power to regulate the entire subject, to invest
boards of examination with such authority, and to give the
civil courts such power to review as it sees fit. When, there-
fore, the legislature issued a general command upon the sub-
ject of reviewing the action of inferior judicial tribunals and
officers acting judicially and made certain exceptions thereto,
the matter was exhausted and the courts have no power to add
an exception relating to any tribunal which the legislature is
presumed to have had in mind.

The part of the Code of Civil Procedure under considera-
tion went into effect on the 1st of September, 1880, and nearly

fifty years before, the judgment of a court-martial was reviewed and affirmed under a writ of certiorari. (*Rathbun* v. *Sawyer*, 15 Wend. 451.) By one of the early decisions of the Court of Appeals, after its reorganization in 1870, the same power was exercised without question. (*People ex rel. Underwood* v. *Daniell*, 50 N. Y. 274.) The strongest case upon the subject, however, occurred a year later when this court not only reviewed but reversed the proceedings of a court-martial of the National Guard. (*People ex rel. Garling* v. *Van Allen*, 55 N. Y. 31.) In that case the relator, upon his trial before a court-martial, was virtually, though not absolutely, denied the right to defend by counsel, and its judgment was reversed by this court upon certiorari, because the right to defend by counsel before a military court in this state is guaranteed by the Bill of Rights as embodied in the Constitution of 1846, although not in that of 1821. (Id. 37.)

These decisions had been made before either the Code of Procedure or the Military Code was passed, and others of like character were made after the former but before the latter was enacted. (*People rel. Spahn* v. *Townsend*, 10 Abb. N. C 169; *Matter of Bracket*, 27 Hun, 605; *People ex rel. Skinnell* v. *Rand*, 41 Hun, 529.) Those statutes, therefore, must be read in the light of the common law as it existed at the date of their passage, which authorized a writ of certiorari to issue to military tribunals organized under the militia statutes of the state for the purpose of reviewing their decisions. The legislature is presumed to have known the common law and to have made its enactments with reference to the decisions of the courts, yet when providing general rules to govern the issuance of this great writ, although it excepted the action of certain tribunals from review, it did not except the action of military tribunals. Even when the Military Code was passed, no provision was made to exempt judgments of the. tribunals created thereby from review by the civil courts according to the law and practice prevailing at the time. Under these circumstances an exception should not be implied by the courts, but left to the legislature in its wisdom to express, if it sees fit.

We thus reach the conclusion that the Supreme Court has power to issue a writ of certiorari to review the determination of a board of examination appointed under section 64 of the Military Code, and that the order dismissing the writ under consideration for want of power was erroneous. If the courts below see fit to dismiss the writ in the exercise of their discretion they have the power to do so, but otherwise it is their duty to require a return and proceed thereon according to law. (*People ex rel. May* v. *Maynard,* 160 N. Y. 453.) The review authorized does not substitute the judgment of the civil court for that of the military court upon the evidence or the merits, but inquires into jurisdiction of the subject-matter, the exercise of authority in relation to the subject-matter according to law, the violation of any rule of law to the prejudice of the relator and the like. (Code Civ. Pro. § 2140.)

It is suggested that there is no power to issue a writ of certiorari to the governor, but it is unnecessary to pass upon that question. While it was done in a recent case, the point does not appear to have been raised. (*People ex rel. Leo* v. *Hill,* 126 N. Y. 497.) In view of a later decision there is grave doubt whether the courts could compel the governor to make a return. (*People ex rel. Broderick* v. *Morton,* 156 N. Y. 136.) The writ in the case before us, however, although issued to the governor, among others, was not served upon him and he is not a proper party. The writ should be directed to the body or officer whose determination is to be reviewed, or to any other person having the custody of the record or other papers to be certified, or to both if necessary. (Code Civ. Pro. § 2129.) The adjutant-general is the custodian of the record and report of an examining board, and hence he was properly made a party. (Mil. Code, § 15.) The determination of the examining board was to be reviewed, and hence the members thereof were proper parties, but the action of the governor was not to be reviewed and he should not have been made a party. His action was executive while theirs was judicial. As he could not have removed the relator

except upon their "findings," a reversal of their determination would render the order of removal void, because there would be nothing to justify it, and this would leave the relator still in office.    While we cannot touch the person of the governor, we can pass upon the effect of his acts and decide whether they are valid or invalid.

The order appealed from should be reversed, with costs, and the matter remitted to the courts below for further proceedings.

PARKER, Ch. J., O'BRIEN, BARTLETT, MARTIN and LANDON, JJ., concur; HAIGHT, J., dissents.

Order reversed, etc.