THE PEOPLE OF THE STATE OF NEW YORK ex rel. THADDEUS HIGGINS, Relator, *v.* LOUIS W. STOTESBURY, as Adjutant-General of the State of New York, and Others, as Members of a General Court-Martial Appointed by Special Orders No. 208, dated Headquarters Division, National Guard, New York, Albany, May 12, 1916, Respondents.

Second Department, April 5, 1918.

War — court martial — power of Appellate Division to review findings of State National Guard court martial — facts not justifying dismissal of officer from military service.

The Appellate Division on writ of certiorari has power to review and revise the findings of a general court martial of the National Guard of this State where there is no evidence to support its finding which dismissed the relator from military service on certain charges.

An officer of the National Guard who was ordered by his colonel to prepare certain muster rolls by a certain date cannot be properly convicted of neglect of duty and discharged from military service by a general court martial, where it appears that before the time set for the completion of his work an officer subordinate to the colonel intervened, intercepted the order and had the work completed before the time set for its completion.

The Appellate Division will respect the conceptions and judgment of said military tribunal in the highest degree compatible with its own sense of proper judicial administration and will only reverse and vacate the findings of said court in the absence of any competent and probative facts tending to sustain its findings. But no exigencies of war may sway or influence a court concerned only to be just.

CERTIORARI issued out of the Supreme Court and attested on the 30th day of December, 1916, directed to Louis W. Stotesbury, as Adjutant-General, and others, commanding

them to certify and return to the office of the clerk of the county of Kings all and singular their proceedings had in removing the relator from office and dismissing him from the military service.

*Anthony J. Griffin,* for the relator.

*Robert P. Beyer,* Deputy Attorney-General [*Merton E. Lewis,* Attorney-General, with him on the brief], for the respondents.

PER CURIAM:

The relator, after meritorious and commended service in actual war, became lieutenant in command of a company in a regiment of the National Guard of New York, but was superseded in such duty by Lieutenant Anderson, who thereby became his superior officer. On February 11, 1916, Lieutenant Anderson ordered the relator to prepare the muster rolls of the company and to have them by February eighteenth ready for the inspection set for February twenty-fourth. But, without awaiting the appointed limit, Lieutenant Anderson's complaint caused the relator to be summoned before the colonel of the regiment on February seventeenth, where to the charge of disobedience of orders, although there had not then been such, the relator explained that he had been detailed to other absorbing work entitled to preference. The colonel deemed the explanation sufficient, and relieved the relator of the other work and directed him to have the muster rolls ready by February twenty-third at eight P. M. There, then, was the thing to be done, and the absolute period within which to do it. Upon the expiration of the time the muster rolls had been prepared and signed by the relator. But the relator did not prepare them. Why did he not do so? Because Lieutenant Anderson, ignoring the terms of his superior's order, anticipated and precluded such performance by making them on February twenty-second. For what the relator was prevented from doing by the other's apprehension of the opportunity and premature appropriation of the duty, the relator was threatened with charges and court martial. But there was presented to him the alternative of resigning from the regiment, which the relator refused. Later the present charges were laid: *First,* disobedience of an order; *second,* conduct

unbecoming an officer and gentleman, in preferring false charges [of which there were three specifications] against the colonel in command. In the meantime, however, the relator had made charges against the colonel, as we are advised he was privileged to do. But, although there had been no trial of such charges, the making of them became herein one of the charges against the relator. So a privileged and untried accusation against the colonel was converted into an offense on the part of the accuser. Although the relator was acquitted on such second charge, he urges that the introduction of it indicates bad faith on the part of the prosecution. The propriety of injecting such matter in this proceeding is obscure, but is not now in question. The first charge, on which he was found guilty, is that the relator, " having received a lawful command from his superior officer," Colonel Conley, " to assist in the preparation of the Muster Rolls   *   *   * did wilfully neglect to comply with such order." This court discovers no evidence whatever of either refusal or neglect, and, therefore, considers itself competent and enabled to review and to revise the findings of the court martial. (*People ex rel. Smith* v. *Hoffman,* 166 N. Y. 462, 476.) The relator [excusable by reason of a dominating detail to other duty for his failure to prepare the muster rolls by February eighteenth, as first directed, although untimely blame for that was preferred by Lieutenant Anderson] was allowed to do the work during a period ending with February twenty-third at eight P. M. Within that period the work had been done by the undue seizure of the duty by Lieutenant Anderson. That, and not neglect, thwarted the relator's performance of the duty. It must be kept in mind that Lieutenant Anderson's order to do the work by February eighteenth is not the subject of the present charge, and that the matter had come under the direct order of· the colonel, to whom the relator became accountable. It is not a thing tolerated by fairness and good faith, nor is it possible in reason that the man may be inculpated for not doing by February twenty-third, eight P. M., a duty imposed by the colonel, where Lieutenant Anderson, intervening and intercepting the order, had done the work on February twenty-second. There can be no peculiarities or exactions of military law or discipline that

condemns an officer for failure to do a duty that has already been done through an abbreviation by an interposing official of the chance accorded to do it. It may not have been intermeddling by Lieutenant Anderson, but it was an interference that set at naught Colonel Conley's arrangement of the matter, and bereft the relator of the scope that the colonel's order afforded him. Will it be answered that the fact the rolls had been prepared cannot avail the relator because he did not know it? The evidence does not show that. The relator testified that about or before noon of February twenty-second he went to the armory and said to Sergeant McGiver of his company that he had come to make the rolls, and that the sergeant told him that the rolls were done. Sergeant McGiver does not deny or affirm that such conversation took place, and his statement and declarations made to his superiors, offered to impeach his veracity, do not become original evidence. So the relator's testimony is uncontradicted. The sergeant was there on that day. Lieutenant Anderson states that. The rolls were made that day. There is no evidence that McGiver did not know the fact. But it is said that the relator should have gone to Lieutenant Anderson, although the relator was acting, as to the rolls; under the colonel's order. What, then, would he have learned? What purpose would have been served? What aid could and should he have tendered Anderson? There is no evidence that the rolls were not finished when the relator met the sergeant. Lieutenant Anderson states that he made them on that day, but he does not state at what hour they were completed. The precise accusation, then, becomes this: Relator, allowed by Colonel Conley to the evening of the twenty-third to make the rolls, and about to do it on February twenty-second, informed by the company sergeant, often the person to do such work, that they had been made, should have gone to an officer not appointed to make them, but who did make them on February twenty-second, to find out whether they had been made, and that his failure is evidence of his willful disobedience of the colonel's order to finish the rolls by February twenty-third, eight P. M. The proposition in effect is that the relator is guilty because he did not try to verify the sergeant's statement, although such effort would,

so far as appears, have shown the statement true. In any case, it was true by February twenty-third. It is the desire of this court, to the highest degree compatible with its own sense of proper judicial administration, to respect the conceptions and judgment of the military tribunal, and it is only in the absence of any competent and probative facts tending to sustain its finding that our conclusion is reached. It is suggested that the present conditions of war have to do with the decision. No exigency may sway or influence a court concerned only to be just.

The findings of the general court martial should be reversed and vacated, and the charges dismissed.

JENKS, P. J., THOMAS, MILLS, RICH and PUTNAM, JJ., concurred.

Findings of the general court martial reversed and vacated, and charges dismissed.