In the Matter of GERARD E. NISTAL, Appellant, against KARL F. HAUSAUER, as Commanding General of the New York National Guard, Respondent.

First Department, May 12, 1953.

*Arthur G. Warner* of counsel (*James E. Birdsall* with him on the brief; *Warner & Birdsall,* attorneys), for appellant.

*Jerome O. Glucksman* of counsel (*Wendell P. Brown* and *Abe Wagman* with him on the brief; *Nathaniel L. Goldstein, Attorney-General,* attorney), for respondent.

VAN VOORHIS, J. This appeal presents the delicate and controversial question of the power of review by the civil courts of action by military authorities of the State. It is clear that whatever power of review is possessed by the courts in such cases should be exercised sparingly, so as not to interfere with the administration of necessary military discipline. Upon the other hand, members of the State militia, although subject to discipline in connection with their military functions, are not entirely removed from civilian life, and their civil rights are entitled to protection in some respects by the civil courts if they are infringed by the military authorities. The civilian occupations of militiamen ordinarily form the main currents of their lives, and the repercussions of military decisions on their occupations are so great that such determinations, if quasi-judicial in nature, may be subject to judicial review. We are

not called upon at present to decide whether the military action taken in this case should be modified, but whether power is lodged in the Supreme Court to review it at all.

This is a proceeding under article 78 of the Civil Practice Act directed to the Commanding General of the New York National Guard, who is the respondent herein, to review the proceedings resulting in petitioner's discharge " without honor " from the New York Air National Guard, and directing the Adjutant General to issue an honorable discharge. Petitioner moved at Special Term, on the petition, for a final order granting the relief demanded. Respondent made a cross motion on affidavits to dismiss the petition upon the grounds that the proceeding is barred by the four months' Statute of Limitations under section 1286 of the Civil Practice Act, and that the court lacks jurisdiction of the subject matter. To this cross motion, petitioner interposed an answering affidavit. Special Term dismissed the petition upon the ground that the court lacked jurisdiction. Petitioner's demand for a trial of the issues was denied. Inasmuch as the petition has been dismissed upon the law, the facts must be assumed to be true, for the purposes of this appeal, as they are stated in the petition and in the affidavits upon respondent's cross motion.

In view of section 1283 of the Civil Practice Act, precise distinctions need not be drawn in proceedings under article 78 between such as are in the nature of mandamus or certiorari. The general principles have been preserved that were applicable to those writs, but an article 78 proceeding need not be dismissed which is described in the moving papers as in the nature of mandamus if the circumstances justify relief by certiorari, or vice-versa, and any appropriate relief which formerly could have been obtained only by separate writs of mandamus or certiorari can now be had in a single proceeding.

The material facts which we are bound to regard as having been established, for the purposes of this appeal, are as follows:

Prior to his enlistment in the New York Air National Guard on November 6, 1947, petitioner had served three terms of enlistment in the Air Corps of the Armed Forces of the United States. He had also served a term of enlistment during the war years in the United States Naval Reserve. Thus he had been continuously in active service in the Armed Forces of the United States from December 17, 1937 through October 24, 1945. During the course of these enlistments, he overstayed a leave one day before his voluntary return to camp when, after a furlough,

he returned to camp by taking an unauthorized ride in an army plane, and, upon another occasion, during peacetime, he fell asleep while on duty as a watchman. Although found guilty by courts martial on both of these charges, they were not considered to have been of sufficient magnitude to prevent his being honorably discharged at the expiration of his enlistments from the armed forces of the United States. These convictions were indorsed on the backs of his certificates of honorable discharge, which were presented by him to the officers in charge of enlistment in the New York Air National Guard when he applied in 1947. The application blank required him to answer a question inquiring whether he had ever been convicted of any offense. Exhibiting his discharge certificates to the enlistment officers, showing his convictions by the two courts martial as above described, he asked them whether this question referred only to convictions by civilian courts, and was told that this interpretation was correct, and that convictions by courts martial were not intended. He answered the question in the negative in making his written application. After his enlistment in the militia, he was assigned to duty as an aide in the recruiting office. Both of the enlistment officers, through whom his application had been processed, directed him to advise other applicants for enlistment that the aforesaid question referred only to convictions by civilian courts and not to convictions by courts martial.

The subject was brought into focus by a request made by petitioner on December 4, 1950, for an honorable discharge before the expiration of his term of enlistment, for the reason that he had been requested by his employer, Radio Marine Corp. of America, to assume the duties of a position in the defense effort, the performance of which conflicted with continued active membership in the National Guard. He was discharged, as requested, but '' without honor ''. The ground for issuing this type of discharge was stated to have been '' fraudulent enlistment '', referring, the petition alleges, to failure to list in his application for enlistment the two convictions by courts martial while in the armed forces of the United States.

It is the assertion of petitioner, to date unchallenged by respondent, that he was so discharged without charges being made, without being given the opportunity to present evidence in his own behalf or to be confronted with the witnesses against him or to know the nature of the evidence offered against him.

It was an executive act to shorten his term of enlistment, but characterizing his discharge as " without honor " was in the exercise of a judicial function. This quality of the function derives, not from any technical definition contained in the Military Law or regulations, but from its inherent nature. A militiaman, according to *People ex rel. Smith* v. *Hoffman* (166 N. Y. 462, 474) : " belongs to civil life ". His civil rights have not been transferred entirely into the keeping of the military authorities, and the civil courts recognize that in civilian life the reputation of a member of the militia may be profoundly affected by a superior officer's adjudication that he is unworthy of an honorable discharge. It partakes of the judicial function to decide whether a person has been guilty of fraud in making an application, and the quasi-judicial nature of the determination is not altered according to whether it is made by an officer or by a board, or whether it results in a discharge described as " dishonorable " or " without honor " under the nomenclature of the Military Regulations. The effect on the man's civilian life is the same. Such a proclamation, disconnected from the relatively trivial facts upon which in this instance it is alleged to have been based, impugns the character or reputation of a citizen, which may not ordinarily be done without basis in fact or in reason. A trial might disclose that there were good reasons for the action taken against petitioner in this instance, but inasmuch as this cross motion was made to test the jurisdiction of the court to review, we must assume, in deciding this appeal, that there was no basis of fact or reason for the issuance of this type of discharge to petitioner, since none appears from the papers before the court.

It was on account of the judicial nature of such a determination that the discharge, in time of peace, of an officer from the State militia was held to be reviewable in *People ex rel. Smith* v. *Hoffman* (*supra*). It is true that, as a commissioned officer in the National Guard, Smith was protected by a clause in the State Constitution requiring trial by court martial, and that petitioner herein, as an enlisted man, would have been entitled to trial by court martial only in event of receiving a dishonorable discharge (State Military Regulations, regulation 15, § IV, subd. 12, par. e), whereas paragraphs b and d of the same subdivision provide that separations from the service prior to expiration of enlistment, without honor, on account of fraudulent enlistment, shall be effected by orders issued by the Adjutant General. It does not appear that the Adjutant General acted in this case,

although the Military Regulations seem to have clothed him with power to do so. Presumably respondent could, and apparently did, exercise power conferred upon the Adjutant General who was his subordinate officer, although respondent also had direct statutory authority, as is hereinafter shown.

Petitioner's conduct was referred to an advisory board, appointed by his unit commander, upon whose adverse recommendation he received his discharge without honor at the hands of respondent, the Commanding General of the National Guard and Chief of Staff, the discharge reading, in form, " By Command of the Governor ". If the authority of the Commanding General and Chief of Staff, or of the Adjutant General, was derived from the Governor to make this particular decision, or if the Governor did, in fact, make the decision, it may well be that review in the civil courts should be denied, not for the reason that the act was executive in nature rather than judicial or quasi-judicial, but that the courts may not direct the Governor to make a return in certiorari (*People ex rel. Broderick* v. *Morton,* 156 N. Y. 136; *People ex rel. Smith* v. *Hoffman, supra,* p. 476). By virtue of his office, the Governor is Commander-in-Chief of the Militia of the State (Military Law, § 6), but it does not follow that his immunity to process relieves respondent or the Adjutant General from court review of quasi-judicial acts performed by them within the broad powers conferred upon them by section 190 of the Executive Law, and sections 10, 11, 13 and 40 of the Military Law and by regulation 15 of the Military Regulations.

If, in characterizing petitioner's discharge as being without honor, respondent acted within powers conferred upon him by statute, rather than by actual direction of the Governor, it is immaterial whether his action was based upon recommendations of an advisory board. It is respondent's determination which is subject to review, if it was quasi-judicial in nature, not the determination of the board. Whether the finding is reviewable depends upon whether it was executive or judicial in quality, not upon whether it was rendered by an official or by a board. In the *Smith* case, the opinion states, at pages 472–473: " It is well established that the judicial determinations of inferior tribunals *and officers acting judicially under the authority of a statute,* may be reviewed under a common-law writ of certiorari, which is issued to correct errors of law affecting the property or rights of the parties, and to test the validity of official action, judicial or *quasi*-judicial in character. * * *

Unless military tribunals are excepted from the general rule their judicial determinations are subject to review by means of this ancient and important writ. They are not expressly excepted either by the Military Code or the Code of Civil Procedure ''. (Italics supplied.) Article 78 of the Civil Practice Act is entitled '' Proceeding against a Body or Officer '', and the intention to include officers as well as boards within the scope of certiorari is attested in the text (§ 1284, subd. 1; § 1296).

The decision to issue this type of discharge being quasi-judicial, jurisdiction of the courts to review attaches, unless prevented by the words '' By Command of the Governor '' which appear upon petitioner's discharge certificate above respondent's signature as Chief of Staff. These words could have no such inhibitory effect if respondent was empowered to act by statute, without necessity for authorization from the Governor, at least unless an express command was actually issued by the Governor determining petitioner's case. To say this is in no sense to draw in question the extent of the powers of the chief executives of the states or of the nation, either over the military establishments or the multitude of other departments and agencies over which they preside. In the federal sphere, during World War II, a considerable part of the ramifications of the executive branch of the Federal Government stemmed from powers conferred upon the President of the United States by the war powers acts, yet this did not prevent court review of action by subordinates in suitable instances. It is not meant to infer that there could be any review in the courts, federal or state, of disciplinary action taken by military authorities within their jurisdictions in the case of active service in time of war.

Undoubtedly, as Commander-in-Chief of the State militia, the Governor is empowered, if he sees fit, to direct details of management of the military and naval forces of the State, such as the type of petitioner's discharge. In practice, however, the ordering of such details is generally confided to the appropriate head of the various divisions and departments of the executive branch of the State Government, and their subordinates. Section 190 of the Executive Law confers upon respondent, as Chief of Staff to the Governor, the status of head of the division of military and naval affairs of the State, and section 11 of the Military Law provides, that under the Governor, he '' shall exercise control over the division of military and naval affairs of the executive department of the state.'' The same section further states that '' The chief of staff may perform any act

authorized by this chapter or the regulations issued pursuant to this chapter through or with the aid of such officers, officials or bureaus of the division of military and naval affairs as he may designate.'' This indicates that the Chief of Staff does not derive his powers from the Governor, but has been invested by statute with the widest powers as head of his department, which he can exert to the full unless the Governor otherwise directs.

The existence of statutory power in respondent controls the disposition of this appeal, since the order appealed from depends upon the assumption that there is no State officer except the Governor who has power to shorten terms of enlisted men in the National Guard. That view is erroneously based upon the applicable statutes, which clearly empower respondent to perform that function. Thus subdivision 1 of section 93 of the Military Law states that '' An enlisted person may be discharged from any force of the organized militia prior to the expiration of his term of enlistment under such conditions as may be prescribed by applicable laws and regulations of the United States and by this chapter and by regulations issued pursuant to this chapter.'' In passing, it may be noted that paragraphs b and d of subdivision 12 of section IV of regulation 15 of the State Military Regulations, indicate that the Adjutant General has power to grant discharges (not honorable) for fraudulent enlistment, before expiration of term. Assuming, however, that there are no State statutes nor regulations covering the case, and that reference is made to article 108 of the Articles of War (U. S. Code, tit. 10, § 1580) adopted by the Congress of the United States in 1806, providing that '' no enlisted man shall be discharged from said service before his term of service has expired, except by order of the President, the Secretary of War, *the commanding officer of a department,* or by sentence of a general-court-martial '' (italics supplied), it does not follow that the chief executive of the State is the only officer who is authorized to take such action. Under the Federal statute, not only the President but also the commanding officer of a department is empowered to discharge enlisted men before the expiration of their terms of enlistment. The President of the United States is Commander-in-Chief of the Army and Navy, yet in the Articles of War '' the commanding officer of a department '' is also granted the same power as the President to shorten enlistments, although, of course, such officer could exercise this power only subject to the power of the President.

The same is true of the respondent herein, who is constituted by statute as the head of the military establishment of the State, subject to the power of the Governor as Commander-in-Chief. The State has no Secretary of War, consequently subdivision 5 of section I of Regulation No. 2 provides that '' The Governor will exercise the same power in respect to the State forces as those conferred upon the President or Secretary of War,'' but it is not said that the Governor supersedes '' the commanding officer of a department,'' as described in the Articles of War. Clearly, if the Federal analogy is to control, respondent was empowered by the Legislature to act upon petitioner's application for discharge. His action is what is subject to review, taken under power granted to him by statute. Unless the Governor really issued such a command, the words '' By Command of the Governor '' are surplusage upon petitioner's certificate of discharge, for the reason that respondent already possessed the power to do what he did by virtue of statute, and no delegation of power from the Governor was necessary. The record does not indicate that the Governor issued any such command in this case, and the probability is to the contrary. In any event, the petition should not be dismissed upon the law without a trial, if it be material to prove whether or not respondent did act in petitioner's case by command of the Governor, rather than in the exercise of his own judgment under power conferred upon him by the Legislature.

The case of *Reid* v. *United States* (161 F. 469) is not controlling. Not only is it not binding upon this court, but it related to the discharge of a soldier from the United States Army. The *Reid* case did not have to do with the State militia. The Supreme Court of the United States in *Reaves* v. *Ainsworth* (219 U. S. 296, 306–307) recognized the distinction, citing the New York State decision of *People ex rel. Smith* v. *Hoffman* (*supra*) with the comment that '' The decision was based on the statutes of the State, which made, it was decided, the military board, whose action was reviewed, a judicial tribunal, and its decision subject to be reviewed by certiorari. And, replying to the argument against the existence of the power of the courts to review the determination of a military tribunal and the cases from the Federal courts, adduced to support the argument, the court said, ' There is a wide difference between the regular army of the Nation and the militia of a State when not in the service of the Nation,' and that ' more rigid rules and a higher state of discipline are required in the one case

than in the other.' '' The opinion in the *Smith* case added (p. 474): " A member of the state militia belongs to civil life, has a civil avocation, and only occasionally engages in the exercise of arms '' during times of peace.

*Matter of Bianco* v. *Austin* (204 App. Div. 34) is not to the contrary. It recognized " that in time of peace the State courts have jurisdiction of a proceeding to secure the discharge of a member of the National Guard of the State,'' (pp. 36–37) but held, following *Matter of Morrissey* (137 U. S. 157) that the enlistment of a minor under the statutory age would not be set aside on application by the infant. What is there said about a discharge in such case being possible only by order of the Governor, was not necessary to the decision nor relevant to the present circumstances.

*People ex rel. Smith* v. *Hoffman* (*supra*) has been cited with approval or followed in other cases, such as *People ex rel. Shiels* v. *Greene* (179 N. Y. 195, 200); *People ex rel. New York & Queens Gas Co.* v. *McCall* (219 N. Y. 84, 90), and *People ex rel. Higgins* v. *Stotesbury* (182 App. Div. 691, 693).

The order appealed from should be modified by denying respondent's cross motion to dismiss the petition, and allowing a trial, and as so modified the order appealed from should be affirmed. If upon the trial it shall develop that petitioner's term of enlistment would not have been shortened by respondent except for the determination finding him guilty of fraudulent enlistment, then his discharge can be vacated entirely, since the court has no power over the mere shortening of the term of enlistment. Likewise, " The review authorized does not substitute the judgment of the civil court for that of the military court upon the evidence or the merits, but inquires into jurisdiction of the subject-matter, the exercise of authority in relation to the subject-matter according to law, the violation of any rule of law to the prejudice of the relator and the like.'' (*People ex rel. Smith* v. *Hoffman, supra,* p. 476; Code Civ. Pro., § 2140.)

PECK, P. J., and DORE, J., concur; COHN and CALLAHAN, JJ., dissent and vote to affirm.

Order modified in accordance with the opinion herein and, as so modifid, affirmed. Settle order on notice. [See *post*, p. 684.]