THE PEOPLE OF THE STATE OF NEW YORK ex rel. HARRY H. BENDER, Appellant, v. CHARLES F. MILLIKEN et al., Constituting the STATE CIVIL SERVICE COMMISSION et al., Respondents.

1. CIVIL SERVICE — WRIT OF PROHIBITION WILL NOT LIE TO RESTRAIN INVESTIGATION BY COMMISSION OF CHARGES AGAINST PUBLIC OFFICIALS. An investigation by the state civil service commission of charges against a public officer for violating the Civil Service Law involves administrative not judicial action. No duty is imposed upon the commission to make any determination, either judicial or otherwise, but to investigate the enforcement and practical operation of the statute and to report its action, with such suggestions as may occur to it as a result of such investigation for the effectual accomplishment of the intent of the law, to the governor, for transmission to the legislature; its function is analogous to that of a legislative committee of inquiry or investigation. A writ of prohibition, therefore, will not lie to restrain the commission from making such investigation, since that writ is addressed to subordinate courts and inferior tribunals only, to restrain them from exceeding their jurisdiction, and cannot be used to prevent action by administrative or legislative bodies.

2. COMMISSION HAS NO POWER OF REMOVAL — CIVIL SERVICE RULE 2. The second of the civil service rules, which provides that a violation of the law or the rules by any person in the public service shall be consid-

ered good cause for the dismissal of such person from the service, does not assume the possession by the commission itself of the power to remove any official or employee; it simply enacts what shall be considered good cause for dismissal by the proper authority.

3. COMMISSION DOES NOT ASSUME POWER TO TRY OFFICIAL BY GIVING HIM AN OPPORTUNITY TO BE HEARD. The fact that the commission furnishes an accused official with the testimony taken in the investigation and accords him an opportunity to present his defense does not constitute an assumption by the commission of the power to try him for any offense, but simply gives him an opportunity, if he so elects, to rebut any reflection cast upon him by the proceedings.

. *People ex rel. Bender* v. *Milliken,* 110 App. Div. 579, affirmed.

(Argued March 19, 1906; decided April 24, 1906.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered January 25, 1906, which affirmed an order of Special Term denying a motion for an absolute writ of prohibition to restrain the state civil service commission from further proceeding in an investigation as to an alleged violation by the relator of the Civil Service Law.

The facts, so far as material, are stated in the opinion.

*Edwin Countryman* for appellant. The Civil Service Law confers no power or authority upon the civil service commission to institute or prosecute an investigation against a public officer merely for the purpose of ascertaining and reporting that he has or has not violated an express provision of the Civil Service Law, which in terms is made a criminal offense and subjects him to a criminal prosecution. (*People ex rel. Gas Co.* v. *Rice,* 138 N. Y. 151; *People* v. *Lyttle,* 7 App. Div. 553; Endlich on Interp. Stat. §§ 178–180; Cooley on Const. Lim. [6th ed.], 218, 219; Sedg. on Const. Stat. & Const. Law [2d ed.] 266, 267; *N. Y. & O. R. Co.* v. *Van Horn,* 57 N. Y. 473; *G. S. Bank* v. *Suspension Bridge,* 159 N. Y. 362; *G. Co. Suprs.* v. *Brogden,* 112 U. S. 261.) Such an investigation by the civil service commission for such a purpose in view of its interpretation of the statute, its rules on the subject and its method of procedure, is clearly an assump-

tion and an improper exercise of judicial power. (1 Greenl. on Ev. § 6; *Hunter* v. *N. Y., O. & W. R. R. Co.*, 116 N. Y. 616; *Montenes* v. *M. S. R. Co.*, 77 App. Div. 493; *People* v. *Lochner*, 177 N. Y. 169; *Matter of Viemeister*, 179 N. Y. 240; *Topham* v. *I. S. R. Co.*, 96 App. Div. 329; *Frace* v. *N. Y. & W. R. Co.*, 143 N. Y. 182; *French* v. *Powers*, 80 N. Y. 146; *Gormerly* v. *McGlynn*, 84 N. Y. 284; *Gormer* v. *Phœnix Ins. Co.*, 22 Hun, 224; *Conderman* v. *Conderman*, 44 Hun, 181; *Rice* v. *Ehle*, 55 N. Y. 518.)

*Julius M. Mayer, Attorney-General (Horace McGuire* of counsel), for Civil Service Commission, respondent. The relator is not entitled to a writ of prohibition. (*Quimbo Case*, 20 N. Y. 531; *Jones* v. *Sherman*, 66 App. Div. 231; *People ex rel. Smith* v. *Doyle*, 28 Misc. Rep. 411; *Wright* v. *Chicago*, 48 Ill. 285.) The civil service commission have power under the statute to make the investigation and compel the attendance of witnesses. (*People ex rel. Stewart* v. *R. R. Comrs.*, 160 N. Y. 202; *People ex rel. Grannis* v. *Roberts*, 163 N. Y. 70; *People ex rel. Harris* v. *Comrs.*, 149 N. Y. 26; *People ex rel. Myers* v. *Barnes*, 114 N. Y. 317.)

*Nelson S. Spencer* for Elliot H. Goodwin et al., respondents. The relator is not in a position to question the proceedings of the state commission. (*People ex rel. Hummel* v. *Davy*, 105 App. Div. 598.) The Civil Service Law confers ample authority on the state civil service commission to conduct the investigation in question. (*Matter of W. S. A. & P. R. R. Co.*, 115 N. Y. 442; *Easton* v. *Pickersgill*, 55 N. Y. 310; *Matter of Bd. of Street Opening*, 12 Misc. Rep. 526; *People* v. *Kipley*, 171 Ill. 44; *I. C. Comm.* v. *Brimson*, 154 U. S. 447.)

CULLEN, Ch. J. The relator is the fiscal supervisor of state charities, an office created by chapter 252 of the Laws of 1902. Complaint having been made to the respondents, the members of the state civil service commission, by one Doty,

38        People ex rel. Bender v. Milliken.        [April,

Opinion of the Court, per Cullen, Ch. J.        [Vol. 185.

a clerk in the office of the relator, that he had been solicited to make a political contribution from his salary in the year 1902, the respondents proceeded to investigate the complaint, and examined witnesses as to the subject-matter thereof. They entitled their proceedings "In the Matter of Alleged Violation of Section 24 of the Civil Service Law in the Department of the Fiscal Supervisor of State Charities." The testimony taken by them tended to show that the solicitations were made by one Prescott, and it possibly, to some extent, reflected on the relator, the complainant testifying that after the solicitation by Prescott he spoke of the matter to the relator who replied: "I will talk with you about this some other time." The testimony of other employees in the office was to the effect that they had made such contributions to the relator personally, but it was asserted that they were made voluntarily and without solicitation. After this testimony was taken one of the respondents moved that the hearing be suspended and a copy of the minutes and evidence be sent to the relator and Prescott, in order that they might have a chance to answer and that a date be fixed in the future to give them an opportunity to make any defense. The motion was carried, and in accordance with this the following letter was sent by the secretary of the commission:

"Albany, *July* 17, 1905.

"Mr. Harry H. Bender, *Fiscal Supervisor of the State Charities*, Albany, N. Y.:

"My Dear Mr. Bender.— By direction of the State Civil Service Commission, I transmit to you herewith a copy of the affidavit of Edwin A. Doty, and testimony taken by the State Civil Service Commission, July 14, 1905, In the Matter of the Alleged Violation of Section 24 of the State Civil Service Law, in the office of the Fiscal Supervisor of State Charities. If you desire a hearing in this matter, will you kindly indicate an early date for the same.

"Very respectfully,

"JOHN C. BIRDSEYE,

"*Secretary.*"

At the subsequent hearing the relator appeared by his counsel and protested against the authority of the respondents to prosecute the investigation.   The protest having been overruled, an alternative writ of prohibition was served on the respondents, to which they duly made a return.   After a hearing on the return the application for the writ was denied by the Special Term, and the order denying the writ has been affirmed by the Appellate Division as a matter of law and not of discretion.

We are of opinion that the action of the courts below was proper.   "A writ of prohibition is that process by which a superior court prevents *an inferior court or tribunal* from usurping or exercising a jurisdiction with which it has not been vested by law." (Spelling on Extraordinary Remedies, sec. 1716.)   "Courts almost universally preserve the original common law features of the writ of prohibition, and confine its use to the prevention of usurpation or excess of jurisdiction by courts and bodies possessing, for certain purposes and in certain instances, quasi-judicial powers." (Id. sec. 1722.) "The office of a writ of prohibition is to restrain *subordinate courts and inferior tribunals* of every kind from exceeding their jurisdiction." (*Quimbo Appo* v. *People*, 20 N. Y. 531.) It does not lie to prevent action by administrative or legislative bodies.   (Spelling on Extraordinary Remedies, sec. 1722; see cases there cited.)   The learned counsel for the appellant does not gainsay this principle, but insists that the action of the respondents was of a judicial character; and he further insists that the attempt of the legislature to confer on the commission judicial powers was unconstitutional and invalid. We entertain a contrary opinion as to the proceedings sought to be restrained; they are administrative, not judicial.   By subdivision 3, section 6 of the Civil Service Law (Laws of 1899, chap. 370), the state civil service commission is directed to "Make investigations concerning and report upon all matters touching the enforcement and effect of the provisions of this act and the rules and regulations prescribed thereunder, concerning the action of any examiner or subordinate

of the commission and any person in the public service, in respect to the execution of this act, and in the course of such investigations each commissioner and the secretary and the chief examiner shall have power to administer oaths." The commission is further authorized to subpœna and require the attendance of witnesses pertinent to the investigation. By the fifth subdivision of the section it is directed that the commission shall " Make an annual report to the Governor for transmission to the legislature, showing its own action, the rules and regulations and the exceptions thereto in force, and the practical effects thereof and any suggestions it may approve for the more effectual accomplishment of the purposes of this act." It thus appears that no duty is imposed on the commissioners to make any determination either judicial or otherwise, but to investigate the enforcement and practical operation of the statute and to report their action, with such suggestions as may occur to them as a result of such investigation for the effectual accomplishment of the intent of the law, to the governor for transmission to the legislature. The function so performed by the commission is strictly analogous to that of a legislative committee of inquiry or investigation. It is not a valid objection to such an investigation that it may disclose crime or wrongdoing on the part of the individuals, provided its object is the framing and enactment of proper laws or regulations. The purpose of many legislative inquiries is to discover wrongdoing or crimes, if they exist, in order that their commission in the future may be prevented by the enactment or amendment of the statutory law. In *People ex rel. McDonald* v. *Keeler* (99 N. Y. 463) the relator was committed by the senate of the state for contempt in refusing to appear and answer before a committee of that body appointed to inquire into charges of fraud and irregularity made against the commissioner of public works in the city of New York. It was held that though the legislature had no power to remove that officer the senate had power to make the inquiry, so that by appropriate legislation a recurrence of the frauds and irregularities, if they

existed, could be prevented or rendered more difficult. The same doctrine was held by this court (*People* v. *Sharp*, 107 N. Y. 427). The result of the investigation or the action taken by the commissioners thereon can in no way have any legal effect on the status or rights of the relator, and in their return the respondents have expressly disclaimed any intention to take action against him. The case of *People ex rel. Smith* v. *Hoffman* (166 N. Y. 462) is not in point. In that case a determination of a board of examination as to the capacity and fitness for service of a military officer was held to be judicial, and an order dismissing a writ of certiorari to review the determination of the board was reversed. Under section 6 of article 2 of the Constitution the officer could not be removed from office unless by the senate on the recommendation of the governor, by the sentence of a court-martial or by an adverse determination by an examination board. An adverse determination by an examining board was, therefore, a prerequisite to the removal of the officer from service. There is nothing of that character in the present case. The report of the respondents may reflect on the relator, but it can have no legal effect on his tenure of office. Under the statute he can be removed by the governor only for cause, an opportunity having been given him to be heard in his defense. The report of the respondents upon the relator's official conduct, whether incriminatory or laudatory, can have only just such effect on the governor's action as he may choose to accord to it.

The learned counsel for the relator contends that under the provision of the second rule formulated by the commission, " The violation of any of the provisions of the Civil Service Law or of these rules by any person in the Civil Service of the State or of any civil division or city thereof shall be considered a good cause for the dismissal of such person from the service," the respondents may proceed to remove the relator from his office. Waiving the point that the respondents absolutely disclaim any such intention and all power over the relator, it seems to us that the contention is purely fanciful

and devoid of merit. The rule does not assume the possession by the commission itself of the power to remove any official or employee. It purports merely to enact what shall be a sufficient ground for dismissal from service of an employee by the proper officer who has the power of appointment and removal. Further, the rule is expressly limited to "such persons," *i. e.*, persons in the civil service of the state or its subdivisions whose appointment and removal are the subject of the statute. The relator is not of that class. It is said, however, that the respondents have assumed to try the relator for crime because they furnished him with the testimony that had been taken in the proceeding and accorded him an opportunity to present what is termed in the letter "his defense." We think this claim is as ill-founded as the last. The proceedings before the respondents plainly show that by their action they did not assume to try the relator for any offense, but deemed it only fair, as the testimony reflected on his conduct, to give him an opportunity, if he elected to avail himself of it, to rebut any reflection upon him. That course is by no means uncommon in strictly legislative investigations, and the privilege is generally accorded any one asking for it to appear and deny imputations cast upon him in the testimony of others.

The order appealed from should be affirmed, with costs.

GRAY, EDWARD T. BARTLETT, HAIGHT, VANN and WILLARD BARTLETT, JJ., concur; CHASE, J., not sitting.

Order affirmed.