In the Matter of the Application of ROBERT J. CARY and WILLIAM ALLEN PAGE, Petitioners, for an Order of Restraint against THE COUNCIL OF THE CITY OF BINGHAMTON, Respondent.

Supreme Court, Special Term, Broome County, March 26, 1942.

*Herman F. Nehlsen,* for the petitioners.

*Hugh J. Heffern, Corporation Counsel* [*Thomas W. Ryan* of counsel], for the respondent.

DEYO, J. This is a proceeding under article 78 of the Civil Practice Act to restrain the respondent from taking any further action on two certain ordinances now pending before the common council of the city of Binghamton for the removal of the petitioners as municipal civil service commissioners. The respondent claims it has the right to proceed by virtue of section 47 of the Optional

City Government Law (Laws of 1914, chap. 444), now repealed, which section provides: " Subject to the provisions of the civil service law, the council under plans A, B and C, and the mayor under plans D, E and F, shall appoint three persons as civil service commissioners to serve for two, four and six years respectively  Each alternate year thereafter there shall be appointed one person as the successor of the commissioner whose term expires, to serve for six years.  Any vacancy shall be filled for the unexpired term in the same manner as an original appointment.  Not more than two members of the commission shall be adherents of the same political party, and no member shall hold any other public office to which a salary is attached.  A commissioner may be removed during his term of office by the unanimous vote of the council, and upon stating in writing the reasons for removal, and after allowing him opportunity of making an explanation."

The relief herein sought is in the nature of that formerly afforded by the writ and order of prohibition, whose office it was " to restrain subordinate courts and inferior tribunals of every kind from exceeding their jurisdiction." (*Appo* v. *People*, 20 N. Y. 531 )  It permitted interference only with acts of a judicial or quasi judicial character and did not lie to prevent acts of an administrative or legislative nature.  (*People ex rel. Bender* v. *Milliken*, 185 N. Y. 35.)  The only question which might properly be considered on such application was whether or not the tribunal whose acts were sought to be restrained had jurisdiction to do the thing complained of.  (*People ex rel. Mayor* v. *Nichols,* 79 N. Y. 582.)  The remedy was available only in extraordinary cases where the grievances could not be restrained by ordinary proceedings or by appeal. (*People ex rel. Mayor* v. *Nichols, supra.*)  One of the best modern day summaries of law relative to this type of relief is found in *Matter of City of New York* v. *Maltbie* (248 App. Div. 36; affd., 274 N. Y. 464), wherein Mr. Justice McNAMEE said (p. 38): ' Prohibition is not favored by the courts, and is never issued as a matter of right, but only in a sound discretion when there is no other remedy; it is not given for the correction of errors, but only to prevent usurpation of jurisdiction, or the exercise of power in an illegal manner or beyond the jurisdiction conferred; and it will be granted only in extreme necessity when the grievance cannot be redressed by ordinary proceedings at law, in equity or by appeal." In that case, it will be noted that the court specifically

pointed out that certiorari was available if the petitioner was aggrieved.

The present provisions embraced in article 78 of the Civil Practice Act represent the codification of the common law. The change is in form only and the nature and function of the remedy remain the same. (*Matter of Culver Contrg. Corp.* v. *Humphrey*, 268 N. Y. 26, 39.)

Although I am not unmindful of the fact that this remedy has been held proper in cases which are to some degree analogous (*People ex rel. Jones* v. *Sherman*, 66 App. Div. 231; affd., 171 N. Y. 684; *Matter of Requa* v. *White*, 170 Misc. 29), there is still considerable question in the instant case whether the acts complained of are of a judicial or quasi judicial character, whether " extreme necessity " exists and whether or not the relief requested could not be appropriately obtained by ordinary proceedings. Rather than resting my decision on these grounds, however, I feel that the matter might better be passed upon upon its merits.

The question which confronts us is whether or not the council of the city of Binghamton has the jurisdiction to enact the pending ordinances. The respondent contends that it has that power, pursuant to section 47 of the Optional City Government Law set forth above. The petitioners maintain that the power of removal apparently granted to the council under this section has application only to a council which is vested with the appointive power and that since the city of Binghamton is operating under Plan F, wherein the mayor is the appointing officer, only the mayor may remove the commissioners. This contention requires that a restriction be read into the section which is not there. It necessitates a presumption that the Legislature did not mean what it said. It demands an interpretation which is at variance with the language employed. This the court may not do. (*Tompkins* v. *Hunter*, 149 N. Y. 117, 122.) The language employed in section 47 of the Optional City Government Law is clear and unambiguous and its meaning is definite and precise and fully justifies the action which the respondent seeks to take.

The petitioners further argue that the grant of power to the council to remove commissioners is at variance with the provisions of the Civil Service Law, and particularly subdivision 6 of section 11, which provides in part, " The mayor or other duly authorized appointing authority may at any time remove any municipal civil service commissioner for cause and after a public hearing, and, except as hereinafter provided, appoint his successor as herein provided for the unexpired term." I cannot agree with this contention. At the time of the adoption of the Optional City Govern-

ment Law in 1914, the Civil Service Law provided that the commissioners could be removed either by the mayor or by the State Commission. (Laws of 1909, chap. 15, § 11.) The Optional City Government Law in no way affected the earlier procedure. It merely afforded a third method whereby a commissioner could be removed in a proper case. By the same token this subsequent enactment of the present subdivision 6 of section 11 of the Civil Service Law (Laws of 1923, chap. 177), presents no complications. Clearly, there was no express repeal of the earlier statute in either case, nor is there that conflict between them which necessitates a repeal by implication. Repeal by implication is not favored (*Naramore* v. *State of New York*, 285 N. Y. 80, 84), and will not be declared unless the inconsistency is plain and unavoidable. (*Grimmer* v. *Tenement House Department*, 204 N. Y. 370, 378.) " A later statute will not be deemed to repeal or abrogate a former one unless it covers the entire subject and was plainly intended to furnish the only law upon the subject, and to be a substitute for the former enactment." (*Matter of Brooklyn, Q. C. & S. R. R. Co.*, 185 N. Y. 171, 178.)

No such inconsistency is presented here. On the contrary, the two sections, when read together, present a clear and comprehensive plan obviously designed to better safeguard the operation of civil service. The mayor or other appointing officer is given the right to remove for cause on charges sustained after a public hearing. The common council of a city operating under the Optional City Government Law is given the right to remove on unanimous vote after the commissioner has been given an opportunity to make an explanation. Lastly, the State Civil Service Commission is given the right to intervene and remove an undesirable commissioner. The provisions in no way conflict nor overlap and there is no logical reason why they may not be construed together as providing cumulative remedies.

The petition and proceedings will be dismissed, with twenty dollars costs to the respondent.

Submit order accordingly.