Bernard S. Meyer, J.
In this article 78 proceeding, the petitioner, the exclusive negotiating representative for all nonsupervisory professional school personnel employed by respondent Board of Education, seeks a judgment prohibiting respondent, sitting pursuant to section 209 (subd. 3, par. [e]) of the Civil Service Law (part of the Public Employees’ Fair Employment Act) as a legislative body, from holding a hearing to fix the salary schedule and insurance coverage, effective July 1,1971, for such personnel. The relief sought and the issues presented raise a preliminary question concerning the form of the proceeding. The substantive questions presented by the pleadings are: (1) whether the collective bargaining agreement between the parties requires arbitration rather than the proposed hearing, (2) whether respondent has complied with the requirements of section 209 (subd. 3) of the Civil Service Law preliminary to such a hearing, and (3) whether the .statute runs afoul of the constitutional requirements of equal protection, due process and free speech. In light of the third argument the court requested the appearance of the Attorney-General (Executive Law, § 71) and he has appeared in support of the constitutionality of the statute.
The collective bargaining agreement between the parties was entered into on July 1, 1970 for a two-year term but provided for reopening and renegotiation of salary schedules and of insurance plans and contributions thereto, to be effective July 1, 1971. The contract also provided for the ultimate handling of grievances, ‘ ‘ defined as any dispute concerning the meaning, interpretation or application of this Agreement, ’ ’ by arbitration. On or about March 1, 1971, the petitioner gave notice of intent to reopen and negotiate increases in salaries and in insurance benefits. Following an impasse, the New York State Public Employment Relations Board named a mediator and thereafter a fact-finder, who made his report and recommendations on or about August 20, 1971. At a meeting in its executive capacity held on August 24, the respondent board voted to reject four of the fact-finder’s five recommendations. Petitioner received no notice that the recommendations were to be voted on at that meeting. As the legislative body referred to in section 209 (subd. 3, par. [e]) of the Civil Service Law, the board, then ordered a public hearing to be held on September 2, 1971. On August 31, 1971 petitioners began this proceeding and the September 2d hearing was stayed pending this decision. The stay is vacated, and for the reasons hereafter stated the proceeding is treated as an action for a declaratory judgment and judgment will be entered declaring that the dispute is not arbitrable, *240 that respondent board has not violated the statute, and that the statutory provision in question is constitutional.
The procedural question arises not from the involvement of the issue of arbitrability, for an order compelling arbitration can be sought either by a special proceeding or by motion in a pending action (CPLB 7503, subd. [a]). There can, therefore, be no objection to the inclusion of a demand for such relief in an action or proceeding brought for another purpose. The difficulty arises, rather, because what petitioner seeks is (1) to impose a prior restraint upon a legislative function and (2) judgment that section 209 (subd. 3, par. [e]) of the Civil Service Law is invalid on constitutional grounds. The classical doctrine is that prohibition does not lie to prevent action by legislative or administrative bodies (People ex rel. Bender v. Milliken, 185 N. Y. 35, 39; cf. Thomson v. Tracy, 60 N. Y. 31, 37; Matter of De Santis v. Brown, 37 A D 2d 865; Matter of Rushmore v. Lipson, 45 Misc 2d 487) and that an article 78 CPLB proceeding is an inappropriate vehicle to test the constitutionality of a statute (Matter of Overhill Bldg. Co. v. Delany, 28 N Y 2d 449, 458; Matter of Lakeland Water Dist. v. Onondaga County Water Auth., 24 N Y 2d 400, 407) as distinguished from the question whether the statute has been applied in an unconstitutional manner (Matter of Overhill Bldg. Co. v. Delany, supra). CPLR 103 (subd. [b]) authorizes the court to treat the proceeding as an action for declaratory judgment, however, and since all necessary parties are before the court, and in view of the conclusion reached no prior restraint upon legislative action will be imposed, the court will do so rather than relegate the parties to a new action for declaratory judgment brought after completion of the legislative hearing.
Turning now to the first substantive issue, the court holds that fixation of salary and insurance levels under the reopening provision is not an arbitrable grievance under the July 1, 1970 agreement, which only requires arbitration of disputes concerning its “meaning, interpretation or application.” The distinction between such restrictive language and language calling for the arbitration of all disputes, whether arising out of the agreement or concerning any term or condition of employment or otherwise, and thus contemplating all disputes arising out of the employment relationship is underscored in Matter of Howard & Co. v. Daley (27 N Y 2d 285). That case involved an employer engaged in interstate commerce and, therefore, brought into play the Federal policy that in construing collective bargaining agreements a matter may be held nonarbitrable ‘1 only where the parties have employed language which clearly *241 rebuts the presumption of arbitrability ” (27 N Y 2d at pp. 289-290). The court held severance pay, though nowhere mentioned in the agreement, to be an arbitrable issue because the broad language of the agreement contemplated all disputes arising out of the employment relationship. It was, however, careful to note (at p. 292) that: “ The arbitration clause is not restricted to disputes concerning interpretation or construction of the agreement. ’ ’
Passing the questions whether respondent has a sufficient connection with interstate commerce to bring it within the Federal policy and whether in a purely intrastate labor matter our courts would apply the same policy, the court bases its conclusion of nonarbitrability upon the limitation of the instant arbitration clause to disputes “ concerning the meaning, interpretation or application ’ ’ of the agreement. The controversy here is about what new provisions are to be inserted in the agreement rather than the meaning, interpretation or application of any existing provision. The limited language used overcomes any presumption and distinguishes the authorities upon which petitioner relies.
The claim that respondent somehow violated section 209 of the Civil Service Law in acting on the fact-finder’s recommendations, in publicizing their action or in calling the legislative hearing, is overruled. The statute contemplates action by the public employer on the fact-finder’s recommendations and does not specify any waiting period or establish any ban on publication of a fact-finder’s findings and recommendations. To the contrary, the statute requires the fact-finder to make public his findings and recommendations within five days of his transmission of them to the parties. Thus, the statutory scheme permits publicity by any party at any time and mandates it by the fact-finder within the five-day period. Moreover, the opening clause of section 209 (subd. 3, par. [e]) of the Civil Service Law clearly contemplates that the public employer, though it is also the legislative body which will hold the public hearing called for by the section, will act on the recommendations in its executive capacity prior to the public hearing. There is no inherent evil or constitutional infirmity in the fact that legislators publicly express their views about or discuss pending matters. It is not unusual for such discussants, because of the nature of the public response to their utterances or of the evidence produced at public hearings, to be persuaded to change their views when voting. Furthermore, the separation of powers doctrine has never been applied below National and State levels (Matter of La Guardia v. Smith, 288 N. Y. 1; County of *242 Mariposa v. Merced Irr. Dist., 32 Cal. 2d 467; Wicomico County v. Todd, 256 Md. 459). That doctrine, therefore, does not make the mingling of executive and legislative functions at the school board level constitutionally impermissible.
Petitioner’s claims of unconstitutionality as a denial of equal protection, due process and free speech fare no better. Significantly, petitioner has documented none of its arguments although afforded an opportunity to submit a memorandum of law. Analysis of the claim starts with the well-established presumption that the statute is constitutional (Wasmuth v. Allen, 14 N Y 2d 391, 397, app. dsmd. 379 U. S. 11; Wiggins v. Town of Somers, 4 N Y 2d 215; Lincoln Bldg. Assoc. v. Barr, 1 N Y 2d 413, app. dsmd. 355 U. S. 12). True it is that under the Taylor Act it is likely that in the case of school districts, special districts and smaller public authorities, the legislative body and its chief executive officer may be very intimately connected with the negotiations leading to impasse, whereas the legislative body of larger governmental units, such as cities and towns, which negotiate by separate departments or laibor relations units probably will be free of such involvement. However, the equal protection concept does not bar all difference; it only bans those differences of treatment which are arbitrary or invidious (cf. Mount St. Mary’s Hosp. v. Catherwood, 26 N Y 2d 493, 511; Rankin v. Shanker, 23 N Y 2d 111, 119; City of New York v. De Lury, 23 N Y 2d 175, app. dsmd. 394 U. S. 455; Matter of Engelsher v. Jacobs, 5 N Y 2d 370, cert. den. 360 U. S. 902). It is well settled that the equal protection guarantee does not prevent all legislative classification. The Legislature may create statutory distinctions, but the power cannot be exercised arbitrarily and the distinctions must have some reasonable basis. * * * The burden of showing that it does not rest upon any reasonable basis but is essentially arbitrary, is upon the one assailing the classification ” (citations omitted; Park Ave. Clinical Hosp. v. Kramer, 48 Misc 2d 826, 829, mod. 26 A D 2d 613, affd. 19 N Y 2d 958). The respondent has not carried its burden on the equal protection issue.
“ 1 Due process ’ is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts ” (Hannah v. Larche, 363 U. S. 420, 442). It does not demand inflexible procedures universally applicable to every imaginable situation, but requires for its resolution a balancing of the governmental function involved against the substance of the private interest affected (Cafeteria Workers v. McElroy, 367 U. S. 886, 895). Thus the no strike provision of section 210 (subd. 1) of the Ciyil Service Law does not offend *243 due process rights because it is reasonably designed to effectuate a valid State policy (“ the orderly and uninterrupted operations and functions of government ”, Civil Service Law, § 200) in an area where the State has authority to act (City of New York v. De Lury, 23 N Y 2d 175, app. dsmd. 394 U. S. 455, supra).
Petitioner’s due process contention is focused on the fact that the board which holds the legislative hearing has already participated in prior negotiations. If that be assumed to be true, there is nonetheless no due process violation. To be remembered is the fact that respondent board when it acts administratively or legislatively during the statutory process is acting in either capacity as the public employer-party to a collective bargaining process, and not in the quasi-judicial capacity of the welfare official-decision maker referred to in Golberg v. Kelly (397 U. S. 254, 271). The appropriation function of the board as a legislative body has not been made a part of the collective bargaining process. Thus section 204-a (subd. 1) of the Civil Service Law recognizes that agreement provisions calling for additional funds are not effective until legislative approval has been given, and section 209 (subd. 3, par. [e], cl. [iv]) of the Civil Service Law authorizes the legislative body to take such action, after fact-finding, as it deems to be in the public interest. The employees ’ due process rights, in terms of notice and participation in procedures up to the legislative determination are fully protected by the statute and they are given the right to ‘ ‘ submit to such legislative body * # * recommendations for settling the dispute ” and to explain their position with respect to the report of the fact-finding board at the public hearing (Civil Service Law, § 209, subd. 3, par. [e], els, [ii], [iii]), and thus to bring to bear upon the board, acting legislatively, both the persuasiveness of the employees’ logic and the weight of public opinion in support of that logic. The same governmental interest which validates the no strike provision of section 210 sustains the legislative hearing process set up by section 209 (subd. 3, par. [e]). The process is reasonably designed to effectuate the State’s policy of uninterrupted function of the public education system, which, notwithstanding some mingling of the board’s executive and legislative functions, outweighs on balance the employees ’ private interest in having the legislative determination made by a body which has had no prior contact whatsoever with the problem. In so holding the court follows the earlier similar conclusion of Mr. Justice Hoyt in Matter of Zeluck v. Board of Educ. (62 Misc 2d 274, affd. on Mr. Justice Hoyt’s opn. 36 A D 2d 615).
*244 Petitioner’s free speech objection is stated but nowhere explained. Since employees have the right above noted to state their views at the legislative hearing, it obviously has no substance. Moreover, a similar argument was considered and rejected in Matter of Zeluck v. Board of Educ. (supra).
In conclusion, it seems worthy of note that, though in McHugh, New York’s Experiment in Public Employee Relations: The Public Employees’ Fair Employment Act (32 Albany L. Rev. 58, 91), the author commented upon “ the remarkable process of the .school board, locked in impasse with its school teachers, submitting its recommendations and those of the fact-finders to itself and entertaining at the same time recommendations from its teacher organizational [sic] for the purpose of reaching an impartial resolution of the impasse ”, and recognized “that ultimate resolution of the impasse may rest with the legislative body of the government involved ”, he suggested no constitutional infirmity in the procedure.