In the Matter of GERARD E. NISTAL, Respondent, against KARL F. HAUSAUER, as Commanding General of the New York National Guard, Appellant.

Argued November 15, 1954; decided December 31, 1954.

*Nathaniel L. Goldstein, Attorney-General (Abe Wagman, Wendell P. Brown* and *Jerome O. Glucksman* of counsel), for appellant. I. The power to grant the application for discharge prior to the expiration of the term of enlistment is lodged exclusively in the Governor. His determination, both on the propriety of shortening the term of enlistment and on the characterization of the discharge, is not subject to review in the civil courts. And this is so whether he exercises his power independently or by delegation of power to the staff through which he exercises his command of the armed forces of the

State. (*People ex rel. Broderick* v. *Morton,* 156 N. Y. 136; *People ex rel. Smith* v. *Hoffman,* 166 N. Y. 462; *Matter of Bianco* v. *Austin,* 204 App. Div. 34; *Matter of Donnelly* v. *Roosevelt,* 144 Misc. 525; *Reid* v. *United States,* 161 F. 469, 211 U. S. 529; *Nordmann* v. *Woodring,* 28 F. Supp. 573; *Denby* v. *Berry,* 263 U. S. 29; *United States* v. *Eliason,* 16 Pet. [U. S.] 291; *Davis* v. *Woodring,* 111 F. 2d 523; *Matter of Brodie,* 128 F. 665.) II. The decision in *People ex rel. Smith* v. *Hoffman* (166 N. Y. 462), is authority for the dismissal of the instant petition. III. Even if we assume for the sake of argument that appellant was vested with independent statutory power to issue the discharge, yet, under the circumstances of this case, review in the nature of certiorari does not lie. (*Reaves* v. *Ainsworth,* 219 U. S. 296; *Creary* v. *Weeks,* 259 U. S. 336; *Gusick* v. *Schilder,* 340 U. S. 128; *Burns* v. *Wilson,* 346 U. S. 137; *Goldstein* v. *Johnson,* 184 F. 2d 342, 340 U. S. 879; *Hurley* v. *United States,* 47 F. 2d 431; *Davis* v. *Woodring,* 111 F. 2d 523; *Reid* v. *United States,* 161 F. 469, 211 U. S. 529; *Nordmann* v. *Woodring,* 28 F. Supp. 573.)

*Arthur G. Warner* and *James E. Birdsall* for respondent. I. The court has jurisdiction of this matter. (*Reid* v. *United States,* 161 F. 469, 211 U. S. 529; *People ex rel. Smith* v. *Hoffman,* 166 N. Y. 462; *People ex rel. Hoesterey* v. *Taylor,* 210 App. Div. 196; *Matter of Bianco* v. *Austin,* 204 App. Div. 34.) II. The charge of fraudulent enlistment was barred by the Statute of Limitations and petitioner should have been advised of that fact. III. Petitioner did not receive a fair trial on the charge of fraudulent enlistment.

DESMOND, J. The Special Term order dismissed petitioner's proceeding under article 78 of the Civil Practice Act on the ground that the relief demanded (compelling the issuance to petitioner by respondent of an honorable discharge from the National Guard) was beyond the jurisdiction of the court, and in the power of the Governor, only. The Appellate Division, reversing that order, denied the motion to dismiss the petition, and granted respondent leave to appeal to this court, certifying three questions as to jurisdiction of subject matter, jurisdiction over the person of respondent, and as to the sufficiency of the petition.

Since appellant has chosen to attack the sufficiency of the petition, the allegations thereof must, of course, be presently taken as true. The Appellate Division majority opinion (282 App. Div. 7, 10–11) contains a good summary of those allegations, which we quote:

" Prior to his enlistment in the New York Air National Guard on November 6, 1947, petitioner had served three terms of enlistment in the Air Corps of the Armed Forces of the United States. He had also served a term of enlistment during the war years in the United States Naval Reserve. Thus he had been continuously in active service in the Armed Forces of the United States from December 17, 1937 through October 24, 1945. During the course of these enlistments, he overstayed a leave one day before his voluntary return to camp when, after a furlough, he returned to camp by taking an unauthorized ride in an army plane, and, upon another occasion, during peacetime, he fell asleep while on duty as a watchman. Although found guilty by courts martial on both of these charges, they were not considered to have been of sufficient magnitude to prevent his being honorably discharged at the expiration of his enlistments from the armed forces of the United States. These convictions were indorsed on the backs of his certificates of honorable discharge, which were presented by him to the officers in charge of enlistment in the New York Air National Guard when he applied in 1947. The application blank required him to answer a question inquiring whether he had ever been convicted of any offense. Exhibiting his discharge certificates to the enlistment officers, showing his convictions by the two courts martial as above described, he asked them whether this question referred only to convictions by civilian courts, and was told that this interpretation was correct, and that convictions by courts martial were not intended. He answered the question in the negative in making his written application. After his enlistment in the militia, he was assigned to duty as an aide in the recruiting office. Both of the enlistment officers, through whom his application had been processed, directed him to advise other applicants for enlistment that the aforesaid question referred only to convictions by civilian courts and not to convictions by courts martial.

" The subject was brought into focus by a request made by petitioner on December 4, 1950, for an honorable discharge before the expiration of his term of enlistment, for the reason that he had been requested by his employer, Radio Marine Corp. of America, to assume the duties of a position in the defense effort, the performance of which conflicted with continued active membership in the National Guard. He was discharged, as requested, but ' without honor '. The ground for issuing this type of discharge was stated to have been ' fraudulent enlistment ', referring, the petition alleges, to failure to list in his application for enlistment the two convictions by courts martial while in the armed forces of the United States.

" It is the assertion of petitioner, to date unchallenged by respondent, that he was so discharged without charges being made, without being given the opportunity to present evidence in his own behalf or to be confronted with the witnesses against him or to know the nature of the evidence offered against him."

This also should be mentioned: petitioner was directed to, and did, appear before a board of officers appointed by appellant to hear, and make recommendations as to, applications for discharge by members of the guard, and on that occasion he was told of the charge of fraudulent enlistment, and gave his explanation thereof. This fact, also, is pertinent: that the military order granting a " Discharge (not honorable) " to petitioner was signed by respondent as Chief of Staff, but, immediately above that signature appeared this: " By Command of the Governor ". We agree with the Appellate Division that it is most unlikely, in view of the Governor's numerous public duties, that he actually and specifically ordered this particular discharge, but, nevertheless, as will appear, the power to discharge is the Governor's power. Appellant, as Commanding General of the New York National Guard, is the Chief of Staff to the Governor, who is the Commander in Chief thereof. Appellant, as Chief of Staff, is the head, also, of the State's Division of Military and Naval Affairs, which division includes the New York National Guard and other military and naval forces of the State. By statute, it is provided that the Governor may perform his duties as Commander in Chief through that Division (see N. Y. Const., art. IV, § 3; State Military Law, §§ 3, 10, 11; Executive Law, § 190). Part of the picture is

section 93 of the State Military Law, also, which says that an enlisted man (like petitioner) may be discharged prior to expiration of enlistment term under such conditions as may be prescribed by the laws and regulations of the United States and by the State Military Law and State regulations, and shall receive a discharge in writing in such form as may be prescribed by such Federal statutes and regulations and State statutes and regulations. Regulation No. 2 of the Military Regulations of this State says, in part, that the Governor, in respect to the State forces, shall exercise the same powers as are conferred upon the President or Secretary of War in respect to the United States Army. No. 15 of the State Military Regulations lists three types of discharge from the guard: Honorable, dishonorable, and neither honorable nor dishonorable, and authorizes a discharge " not honorable " where there has been a fraudulent enlistment. There seems to be nothing in the United States statutes directly affecting our question, since the United States statutes referring to discharge of persons in the " Army " have no direct application to enlisted personnel of the National Guard, although the latter organization is subject, in varying respects, to both Federal and State control.

Our own analysis of our problem is as follows: petitioner, for his own reasons, applied for discharge prior to expiration of enlistment; three kinds of discharge are provided for by the State regulations, including a discharge without honor; a board set up for the purpose of making recommendations as to such applications recommended that petitioner be given a " Discharge without Honor "; such a discharge was given under the hand of respondent, as Chief of Staff, with the accompanying recital that the action was " By Command of the Governor "; as Commander in Chief the Governor has undoubted power in this respect, respondent is the Governor's subordinate, and the civil courts cannot go back of the document to determine whether or not the Governor in fact commanded the action; the kind of discharge to be given an enlisted man is not controlled by statute and " must necessarily be left in the discretion of the executive officer having power to grant some kind of discharge " (*Reid* v. *United States*, 161 F. 469, 472, appeal dismissed 211 U. S. 529, holding that the court could not review such discretionary action as to a member of the United States Army) ; there is no statute

requiring or authorizing a trial or any particular kind of hearing in such cases.

We turn now to the opinions below. Special Term discussed *People ex rel. Smith* v. *Hoffman* (166 N. Y. 462) which held that a determination by a military board as to National Guard *officers'* fitness was a judicial finding, subject to civil court review. However, as Special Term pointed out, the *Smith* v. *Hoffman* result was dictated by section 6 of article XII of the State Constitution, which says that no *commissioned officer* in this State's militia, shall be removed during his term unless by the Senate, on the recommendation of the Governor stating grounds, or by the sentence of a court-martial, " or upon the findings of an examining board organized pursuant to law ". In other words, while the State Constitution thus requires a trial and findings (that is, a judicial process) for removal of an officer, there is nothing similar in the Constitution or statutes as to enlisted men, and the regulations provide only for a recommending board, saying nothing about a hearing or findings. Furthermore, the *Smith* case (*supra*) not only is inapposite because based on the constitutional fiat of a hearing and findings in the case of an officer, but because, also, the *Smith* case had to do with an involuntary separation from the State's military service while ours is the case of a voluntary application for discharge, with discretion in the military authorities as to what kind of discharge should be granted. Special Term pointed out, too, that the only State statute (Military Law, § 93) mentioning discharge says that discharge before expiration of enlistment shall be ordered pursuant to Federal and State Laws and Regulations. Various Federal statutes cited in the Special Term opinion are not, we think, important, since there is nothing in the Federal statutes, old or new, cutting down the power of the Governor, as Commander in Chief of the State's military forces, to order such discharges. We agree with the concluding statement by Special Term that, since the Governor has, through his Chief of Staff, ordered this discharge in the present case, the civil courts cannot review it.

The Appellate Division opinion, with which we are compelled to disagree, says that the discharge of petitioner " without honor " was the exercise of a judicial function. But shortening the term of enlistment, it is conceded, was an executive act. We

do not agree that either of those acts was judicial, that either was anything but discretionary, or that either is subject to civil court review. The Appellate Division opinion concedes that even if the decision were judicial but was made by the Governor or by order of the Governor, it is not subject to certiorari, citing *People ex rel. Broderick* v. *Morton* (156 N. Y. 136). But it is suggested that there should be a trial to determine whether or not the Governor did so order it, or whether appellant acted under independent authority conferred directly upon him by statute. We, however, do not think that the civil courts have jurisdiction to try any such issue. In any case, as it seems to us, the determination as to the kind of discharge to be issued is purely discretionary, and it must be presumed, in the absence of contrary pleading or proof, that this discretion has been exercised as to respondent by or under the direction of the Governor.

*People ex rel. Smith* v. *Hoffman* (166 N. Y. 462, *supra*), while not in point here, as I have shown above, does contain language by this court stating a rule of law which decrees a reversal here. This court's opinion in that case, at page 471, says that if the board dealing with the discharge of Smith had the duty not of advising the Governor but of making an adjudication, certiorari would lie. At page 468 of the *Smith* v. *Hoffman* opinion, it is pointed out, however, that if the board was merely " an agency to advise the governor, as commander-in-chief " and the Governor could act regardless of the recommendation, then certiorari would not lie. The latter is this present case, and there can be no judicial review of petitioner's discharge.

It is unnecessary to pass upon (neither court below did) respondent's further defense that this proceeding must be dismissed as late, having been commenced after expiration of the four months' time limitation of article 78 of the Civil Practice Act. Pertinent dates are: December 18, 1950, board met, interviewed petitioner, and considered his application for discharge; December 28, 1950, order for petitioner's discharge " not honorable " issued, and notice thereof given to petitioner; January 5, 1951, petitioner acknowledged receipt of order and asked for review thereof; January 25, 1951, petitioner was notified that proceedings had been reviewed and there would be no further hearing; February 8, 1952, petitioner brought an article 78 pro-

ceeding (not this one) which was discontinued; May 20, 1952, petitioner called for and received his discharge paper, dated December 29, 1950; June 5, 1952, petitioner commenced the present proceeding. Thus, although the actual written certificate of discharge was not received until about fifteen days before this proceeding was commenced, the determination which he is seeking to review had been made, and notice given him thereof, more than a year before the commencement of this proceeding.

As the Appellate Division opinion points out, petitioner's "not honorable" discharge may have an adverse effect on his reputation and career. However, it is also true, as was said in *Orloff* v. *Willoughby* (345 U. S. 83, 93) that "judges are not given the task of running the Army". This form of discharge is probably damaging to petitioner's reputation and to his prospects in life, but ours is a pure legal question only, as to whether or not it can be reviewed by the civil courts.

Respondent calls to our attention that, under the Federal Uniform Code of Military Justice (U. S. Code, tit. 50, ch. 22), there is a Statute of Limitations (§ 618) of two years as to fraudulent enlistment, which means that a trial before a court-martial on a charge of fraudulent enlistment must be brought on within two years. We see no application of that statute to a determination by the Governor or the Commanding General on an application for voluntary discharge. It is conceded in these briefs that a dishonorable discharge cannot be imposed on a soldier except after a court-martial but here, again, the distinction seems plain that a dishonorable discharge has always been considered punishment for wrongdoing, whereas a discharge without honor means only that the soldier is being discharged without the kind of commendation involved in an honorable discharge.

The three certified questions ask whether the petition should be dismissed for lack of subject matter jurisdiction, for lack of jurisdiction over respondent's person, or as insufficient in law. We hold that the courts do have in personam jurisdiction over appellant but lack subject matter jurisdiction, and that the petition is insufficient in law.

The order of the Appellate Division should be reversed, and that of Special Term affirmed, with costs in this court and in the Appellate Division. The first and third questions certified should be answered in the affirmative, the second in the negative.

LEWIS, Ch. J., DYE, FULD and FROESSEL, JJ., concur with DESMOND, J.; CONWAY, J., dissents and votes to affirm upon the opinion of VAN VOORHIS, J., in the Appellate Division; VAN VOORHIS, J., taking no part.

Ordered accordingly.