In the Matter of ROBERT L. BOLING, Petitioner, *v.* NELSON A. ROCKEFELLER, as Commander in Chief of the Air National Guard of New York, et al., Respondents.

In the Matter of WILLIAM F. DUNPHY, Petitioner, *v.* NELSON A. ROCKEFELLER, as Commander in Chief of the Air National Guard of New York, et al., Respondents.

In the Matter of JOHN F. HALLA, Petitioner, *v.* NELSON A. ROCKEFELLER, as Commander in Chief of the Air National Guard of New York, et al., Respondents.

In the Matter of LEO J. KEATING, Petitioner, *v.* NELSON A. ROCKEFELLER, as Commander in Chief of the Air National Guard of New York, et al., Respondents.

Supreme Court, Erie County, January 25, 1967.

*Phillips, Lytle, Yorkey, Letchworth, Hitchcock & Blaine (John R. Lytle* and *Peter B. Schrier* of counsel), for petitioners. *Louis J. Lefkowitz, Attorney-General (Richard Jenczka* of counsel), for respondents. *Carson Leonard* in person.

GILBERT H. KING, J. Petitioners brought these proceedings pursuant to article 78 of the CPLR for a judgment of this court directing the respondents to reinstate them as members in the Air National Guard of New York, to reinstate them as civilian air technicians and to award them back pay.

Petitioners were, for periods ranging from 3 to 16 years, members in good standing of the Air National Guard of the State of

New York and were employed as civilian technicians by the Guard for periods ranging from 3 to 12 years.

It was stated on the argument that the petitioners were requested to volunteer for service with their unit in Air Force exercises in Hawaii in the Summer of 1965, and that they all refused to do so.

Thereafter each of the petitioners was given an honorable discharge from the Air National Guard, Boling and Halla on August 18, 1965; Dunphy on August 23, 1965 and Keating on November 25, 1965. Each discharge was made prior to the expiration of the term of enlistment. The authority for the discharge is stated in the discharge orders to be section 93 of the Military Law, and New York Air National Guard regulation 39-10. The petitioners were also discharged from their employment in their civilian capacity because of regulations which required that civilian employees of the Guard be members in good standing of the Guard.

On August 14, 1965, the petitioners Boling and Halla, having somehow acquired knowledge of their impending discharge filed grievances protesting the proposed action and asked that the matter be reviewed and corrected. On November 19, 1965, they were advised by the Chief of Staff to the Governor that their grievance complaint was rejected. On April 7, 1965, the petitioner Boling, through his attorneys, wrote the Governor requesting petitioner's reinstatement as a member of the Guard and as a civilian employee thereof. On April 27, 1966, the petitioner Boling was advised by the State Judge Advocate that the action taken in his case was proper. On August 19, 1966, petitioner Boling and the other petitioners commenced the proceedings now before the court. Except for the joinder by Halla with Boling in the August 14, 1965 grievance complaint, the petitioners Halla, Keating and Dunphy took no further action on their respective discharges until the commencement of these proceedings in August, 1966.

In each petition it is alleged that '' it is the belief [of petitioner] that his discharge from the Air National Guard of New York was effected pursuant to rules and regulations that were not filed with the office of the Department of State as of the date of petitioner's discharge and petitioner has been informed by his attorney, and is of the belief, that said rules and regulations were not deemed ' effective ' until so filed, in accordance with Article IV, Section 8 of the New York Constitution.'' It is also alleged that petitioner '' has been arbitrarily and unlawfully deprived of his membership in the Air National Guard of New York, with its attendant rights and privileges, and, as a

result, has been deprived of his employment and salary as a civilian technician thereof."

In subdivision 1 of section 3 of the Military Law of the State of New York, it is provided that the Governor of the State shall be Commander-in-chief of the militia, is authorized to issue regulations for the government of the militia and that such regulations " shall have the same force and effect as the provisions of this chapter but they shall conform to the laws and regulations of the United States relating to the organization, discipline and training of the militia, to the provisions of this chapter and, as nearly as practicable to the laws and regulations governing the army, navy and air force of the United States."

Subdivision 1 of section 93 of the Military Law provides that " An enlisted person may be discharged from any force of the organized militia prior to the expiration of his term of enlistment under such conditions as may be prescribed by applicable laws and regulations of the United States and *by this chapter and by regulations issued pursuant to this chapter.*" (Emphasis supplied.)

Section 8 of article IV of the State Constitution provides that " No rule or regulation made by any state department, board, bureau, officer, authority or commission, *except such as relates to the organization or internal management* of a state department, board, bureau, authority or commission shall be effective until it is filed in the office of the department of state. The legislature shall provide for the speedy publication of such rules and regulations, by appropriate laws." (Emphasis supplied.)

In the court's opinion, rules or regulations governing the enlistment and discharge of militia personnel relate " to the organization or internal management " of the militia and therefore need not be filed in the office of the Department of State to be effective. The regulations of the militia are confined to the body of the militia and affect only its members. They are not the kind of rules and regulations which affect the public in general or " which govern the conduct of and impose burdens " on the general public. (*People* v. *Fogerty,* 18 N Y 2d 664.) The failure to file the regulations in the office of the Department of State does not afford the petitioners any grounds for the relief sought.

This court does not have the power to compel the Governor to reinstate the petitioners in any event. " Mandamus will not issue to the governor to compel performance of an act by him " whether ministerial or involving executive judgment and discretion. (*People ex rel. Broderick* v. *Morton,* 156 N. Y. 136, 146; *People ex rel. Sutherland* v. *Governor,* 29 Mich. 320.)

The Governor of the State is Commander-in-chief of the militia. His action in discharging an enlisted man prior to the expiration of his term of enlistment is an executive act. (*Matter of Nistal* v. *Hausauer,* 308 N. Y. 146, 152.) If the discharge decision is " made by the Governor or by order of the Governor, it is not subject to certiorari ". (*Matter of Nistal* v. *Hausauer, supra,* p. 153; *People ex rel. Broderick* v. *Morton, supra.*)

In the *Nistal* case, the enlisted man was discharged " without honor " and that type of discharge provided the basis for a strong appeal to the courts of this State for review and relief. Yet the court held that the kind of discharge to be given an enlisted man " must necessarily be left to the discretion of the executive officer having power to grant some kind of discharge " (*Reid* v. *United States,* 161 F. 469, 472, app. dsmd. 211 U. S. 529, holding that the court could not review such discretionary action as to a member of the United States Army). If the courts may not review the kind of discharge given, they clearly lack the power to review the timeliness of a discharge.

In the *Nistal* case, it was argued that the discharge might have an adverse effect on the reputation and career of the man discharged. The court acknowledged (p. 154) that the form of discharge might be " damaging to petitioner's reputation and to his prospects in life ", but pointed out that " judges are not given the task of running the Army " (*Orloff* v. *Willoughby,* 345 U. S. 83, 93) and therefore the only question to be resolved was a purely legal one, as to whether or not the civil courts have any right of review and held that neither the form of discharge nor the shortening of the term of enlistment was " subject to civil court review." (*Nistal, supra,* p. 153.)

The discharge of the petitioners by shortening their term of enlistment was purely discretionary with the Governor as Commander-in-chief of the militia and is not subject to review by a civil court. The fact that as a consequence of the discharge, the loss of a civilian position occurred does not clothe the courts with any additional or greater authority over the subject matter.

The petitions are in all respects denied and the proceedings dismissed, without costs.