[642 NYS2d 915]

Jerry Kolomick, Appellant, v New York Air National Guard et al., Respondents.

Second Department, May 13, 1996

368

---

APPEARANCES OF COUNSEL

*Esseks, Hefter & Angel,* Riverhead *(Stephen R. Angel* of counsel), for appellant.

*Dennis C. Vacco, Attorney-General,* New York City *(Elizabeth Bradford* and *Robert K. Drinan* of counsel), for respondents.

## OPINION OF THE COURT

GOLDSTEIN, J.

At issue here is whether a member of the New York Air National Guard may bring an action under the Human Rights Law (Executive Law § 290 *et seq.)* to recover damages for an unlawful discriminatory practice allegedly perpetrated by the New York Air National Guard. We hold that such claims are governed by the Military Law and Federal regulations, and not by the Human Rights Law.

The plaintiff is a sergeant in the New York Air National Guard. In 1990, he applied for the position "medical pararescue technician". His application was denied, allegedly because of his age.

The plaintiff brought a complaint pursuant to National Guard Regulation (AF) 30-3, which sets forth a uniform "DISCRIMINATION COMPLAINT SYSTEM", promulgated by the United States Departments of the Army and Air Force for both the Army and Air National Guard. That regulation provides that "[a] final decision is not subject to further review or appeal". The plaintiff's complaint pursuant to that regulation was pending when the instant action was commenced.[1]

In the instant action, the plaintiff seeks to recover compensatory and punitive damages for violation of Executive Law § 296 (1) (a). The Supreme Court initially dismissed the plaintiff's

---

1. The defendants state in their brief that by letter dated May 17, 1994, the National Guard Bureau issued a final decision with respect to that complaint, finding no discrimination.

complaint, finding that the plaintiff failed to exhaust his administrative remedies because the complaint pursuant to National Guard Regulation (AF) 30-3 was still pending. Upon reargument, the court acknowledged that the complaint did not constitute a complaint with a "local commission on human rights, or with the superintendent", which could bar commencement of an action for damages based upon the same discriminatory practice (Executive Law § 297 [9]). However, the court adhered to the original determination dismissing the complaint, holding that the Supreme Court lacked subject matter jurisdiction to review what was essentially a military personnel decision.

Under the Human Rights Law, it is an unlawful discriminatory practice for an employer to refuse to hire or to discharge from employment any individual, or to discriminate against such individual in compensation, terms, conditions, or privileges of employment, because of age (see, Executive Law § 296 [1] [a]). The term "employer" is defined as an employer who does not have fewer than four employees (see, Executive Law § 292 [5]), and the term employee is defined as an employee who is not employed by parents, a spouse or child, or in domestic service of any person (see, Executive Law § 292 [6]). The Human Rights Law is generally applicable to "every individual within this state" (Executive Law § 290 [3]), and must be liberally construed to accomplish its purposes (see, Executive Law § 300).

The defendants, in seeking dismissal of the plaintiff's complaint, cited cases relating to the Federal Age Discrimination in Employment Act (see, 29 USC § 621 et seq.), which defines "employer", inter alia, as "a person engaged in an industry affecting commerce who has twenty or more employees", "a State or political subdivision of a State", and any interstate agency, but not the United States (29 USC § 630 [b]). 29 USC § 633a prohibits age discrimination against employees at least 40 years of age in "military departments" and "executive agencies" of the United States. Federal case law distinguishes between employees of "military departments", defined as the Department of the Army, the Department of the Navy, and the Department of the Air Force (5 USC § 102), including the "executive part of the department and all field headquarters, forces, reserve components, installations, activities, and functions" (10 USC § 101 [a] [6]), from members of the "armed forces" (10 USC § 101 [a] [4]; see, e.g., Mier v Owens, 57 F3d 747, cert denied sub nom. Mier v Van Dyke, — US —, 116 S Ct 1317;

*Frey v State of Cal.,* 982 F2d 399, *cert denied* 509 US 906). However, the Federal Age Discrimination in Employment Act involves a different statutory framework, which is clearly not applicable here, since the plaintiff was only 35 years old when the alleged discriminatory practice occurred. Thus, the case law analyzing its provisions is inapposite.

The New York Air National Guard is part of the organized militia of this State *(see,* Military Law § 2), governed by Military Law § 4, which provides:

**"Equality of treatment and opportunity**

"It is hereby declared to be the policy of the state that there shall be an equality of treatment and opportunity for all persons in the organized militia without regard to race, creed, color, national origin or sex. Such policy shall be put into effect by regulations to be issued pursuant to section three of this chapter, it being necessary to give due regard to the powers of the United States which are or may be exercised over the militia of the state."

Military Law § 3 (1) provides, in pertinent part: "The governor is hereby authorized to issue regulations for the government of the militia. Regulations issued by the governor shall have the same force and effect as the provisions of this chapter but they shall conform to the laws and regulations of the United States relating to the organization, discipline and training of the militia, to the provisions of this chapter and, as nearly as practicable to the laws and regulations governing the army, navy and air force of the United States."

In support of their claim that the New York State Supreme Court lacks subject matter jurisdiction over the plaintiff's claim, the defendants cite Federal case law. Those cases note that, under the United States Constitution, Congress and not the Federal courts was granted "plenary control over rights, duties, and responsibilities in the framework of the Military Establishment" *(Chappell v Wallace,* 462 US 296, 301; *see, Watson v Arkansas Natl. Guard,* 886 F2d 1004; US Const, art I, § 8, cls 12-14). However, Federal case law on the question of subject matter jurisdiction is inapposite, because the Federal courts are courts of limited jurisdiction *(see, Northwest Airlines v Transport Workers,* 451 US 77, 95). The New York Supreme Court, on the other hand, is a court of general jurisdiction, "competent to entertain all causes of actions unless its jurisdiction has been specifically proscribed" *(Thrasher v United States Liab. Ins. Co.,* 19 NY2d 159, 166).

In *Matter of Nistal v Hausauer* (308 NY 146, 152-153, *cert denied* 349 US 962), the Court of Appeals held that the civilian

courts did not have subject matter jurisdiction to review a purely discretionary act of the Governor, acting as Commander in Chief of the National Guard. However, the New York State Constitution was subsequently amended to add a new provision, New York Constitution, article VI, § 7, which grants the Supreme Court jurisdiction over classes of actions or proceedings created by the Legislature and not recognized at common law *(see,* NY Const, art VI, § 7 [b]; *Kagen v Kagen,* 21 NY2d 532; *see also, Flacke v Onondaga Landfill Sys.,* 69 NY2d 355, 363). A cause of action under the Human Rights Law was created by the Legislature. Further, a cause of action to recover damages for violation of the Human Rights Law may be maintained against the State or an agent thereof in the Supreme Court as well as the Court of Claims *(see, Koerner v State of New York,* 62 NY2d 442, 448-449).

Thus, the Supreme Court has subject matter jurisdiction over complaints alleging violations of the Human Rights Law, but can only grant the plaintiff relief if the plaintiff states and establishes a cause of action *(see, Thrasher v United States Liab. Ins. Co.,* 19 NY2d 159, *supra; Kay-Fries, Inc. v Martino,* 73 AD2d 342). Any defects in the plaintiff's allegations are relevant to whether the plaintiff has stated a cause of action, and not to whether the Supreme Court has subject matter jurisdiction.[2]

Under the Supremacy Clause of the United States Constitution, a State law can be deemed invalid under the doctrine of Federal preemption if it "conflicts with federal law or would frustrate the federal scheme" *(Malone v White Motor Corp.,* 435 US 497, 504; *see, Matter of Mott v New York State Div. of Hous. & Community Renewal,* 211 AD2d 147, 151). Although the United States Constitution grants the States the power to appoint officers and train the State militia *(see,* US Const, art I, § 8, cl 16), that power must be exercised in a manner which is consistent with Federal regulation *(see, Perpich v Department of Defense,* 496 US 334). Members of the State militia may be called to active duty in the United States military should the need arise *(see, Perpich v Department of Defense, supra,* at 350). Based upon those principles, it has been held that the regulation of personnel criteria for the National Guard has been preempted by Federal regulation, rendering State antidiscrim-

2. *Matter of Hickman v Roslyn Air Natl. Guard* (99 AD2d 837), cited by the plaintiff, which confirmed a determination of the New York State Division of Human Rights dismissing a complaint, without discussing subject matter jurisdiction, is consistent with this analysis.

ination laws of general application inapplicable to the National Guard *(Hazelton v State Personnel Commn.,* 178 Wis 2d 776, 794, 505 NW2d 793, 800; *see also, C.J. v Vuinovich,* 252 NJ Super 122, 132-134, 599 A2d 548, 553-554). In *Hazelton v State Personnel Commn. (supra),* the Court of Appeals of Wisconsin noted that certain Wisconsin statutory provisions recognized that the organization of the Wisconsin National Guard must conform to Federal laws or regulations *(see,* Wis Stat § 21.35).

Similarly, in this State, the Legislature explicitly recognized the supremacy of Federal law in Military Law § 3 (1), which provides that regulations governing the National Guard "shall conform to the laws and regulations of the United States relating to the organization, discipline and training of the militia", and Military Law § 4, which specifies that the State's policy against discrimination in the organized militia shall be governed by regulations issued pursuant to Military Law § 3, "it being necessary to give due regard to the powers of the United States".[3] Thus, it is clear that the Legislature contemplated a scheme of regulation of discrimination in the military separate and distinct from laws of general application *(see, Matter of Boling v Rockefeller,* 52 Misc 2d 745). The Governor has the authority to promulgate regulations governing the National Guard *(see, Matter of Boling v Rockefeller, supra),* but that authority must be exercised in conformity with Federal regulation. The Governor's authority to regulate the National Guard is subordinate to Federal authority *(see, Perpich v Department of Defense, supra).*

In this case, the plaintiff filed a discrimination complaint pursuant to regulations which were promulgated by the United States Departments of the Army and Air Force *(cf., Hazelton v State Personnel Commn., supra).* Those regulations provided that a final decision on the plaintiff's complaint was not subject to further review or appeal. To permit the plaintiff an alternative mode of redress pursuant to the Human Rights Law would be contrary to those regulations, contrary to principles of Federal preemption, and contrary to the clear intent of the Legislature, as expressed in the Military Law.

Accordingly, the complaint fails to state a cause of action. The order dismissing the complaint is affirmed insofar as appealed from.

O'BRIEN, J., concurs in the result, with the following memo-

---

3. Military Law § 4 does not include age discrimination as a form of discrimination barred in the organized militia, but that would not preclude barring age discrimination by regulation.

randum: The issue at the heart of the plaintiff's case is whether he has the qualifications to serve as a full time medical pararescue technician in the New York Air National Guard. I agree with the Supreme Court that civilian courts do not have subject matter jurisdiction over controversies arising from such military personnel decisions. I therefore concur with my colleagues' decision to affirm, but on a different ground.

Management of the State militia is the province of the Governor and the Legislature (see, NY Const, art XII, § 1; Military Law § 3), subject, of course, to Congress's authority over the National Guard of the United States, a Federal organization comprised of State National Guard units and their members. A person who enlists in a State National Guard unit simultaneously enlists in the National Guard of the United States (see, Perpich v Department of Defense, 496 US 334).

The State Legislature established a nondiscrimination policy for the militia, declaring that "there shall be an equality of treatment and opportunity for all persons in the organized militia without regard to race, creed, color, national origin or sex" (Military Law § 4). A discrimination complaint may be brought within the military system under procedures established by the United States Departments of the Army and Air Force for investigating and adjudicating discrimination complaints in the Army and Air National Guard. These procedures implement title VI of the Civil Rights Act of 1964 (see, 42 USC § 2000d) and Army and Air Force regulations which prohibit discrimination based on, inter alia, age.

The plaintiff unsuccessfully invoked this discrimination complaint procedure, which does not provide for judicial review. He seeks a de novo review of his superior officers' decision in a civilian court in the form of a claim under the Human Rights Law. However, it has long been the rule that, "[u]nder the Constitution and statutes the courts have no jurisdiction over, and, therefore, cannot interfere with, the management of the military forces of the State" (People ex rel. Gillett v DeLamater, 247 App Div 246, 251 [civil court had no jurisdiction over action of the Governor in relieving the respondent from duty in a military matter]; see also, Matter of Nistal v Hausauer, 308 NY 146 [court did not have subject matter jurisdiction to review petitioner's discharge from the National Guard]; People ex rel. Smith v Roe, 51 App Div 494 [civil court had no power to interfere with an order temporarily relieving the relator from his duties as an officer in the State National Guard since the order related peculiarly to the management and control of the military forces of the State]).

There are cogent policy reasons which preclude civilian courts from second-guessing decisions involving military training, discipline, and justice. The military is a specialized community which has "a hierarchical structure of discipline and obedience to command * * * wholly different from civilian patterns" *(Chappell v Wallace,* 462 US 296, 300), and it is extensively regulated by the Congress and the executive branch. As a consequence, military decisions concerning personnel and discipline are not subject to judicial review *(see, e.g., Chappell v Wallace, supra; Orloff v Willoughby,* 345 US 83; *Watson v Arkansas Natl. Guard,* 886 F2d 1004; *Crawford v Texas Army Natl. Guard,* 794 F2d 1034).* While civilian courts may entertain claims regarding the constitutionality of a military regulation or statute of general applicability, claims involving personnel decisions which bear upon the readiness of the military to perform its mission are not justiciable *(see, Watson v Arkansas Natl. Guard, supra; Kreis v Secretary of Air Force,* 866 F2d 1508, 1511).* As the Court stated in *Gilligan v Morgan* (413 US 1, 10), "it is difficult to conceive of an area of governmental activity in which the courts have less competence. The complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject *always* to civilian control of the Legislative and Executive Branches" (emphasis in original). Contrary to my colleagues, I do not find that the 1962 amendment to the New York State Constitution *(see,* NY Const, art VI, § 7 [b] [former subd (c)]), which gives the Supreme Court jurisdiction over new classes of actions and proceedings created by the Legislature, alters the well-established rule that courts have no jurisdiction to interfere in military personnel decisions.*

Moreover, given the policy of noninterference by civilian courts in issues affecting military discipline and justice, the plaintiff has offered no compelling reason for this Court to construe the term "employer" in the Human Rights Law to include the State militia absent a clear expression of intent by the Legislature to bring the military within the provisions of the statute *(see, e.g., Goldstein v State of New York,* 281 NY

---

* Prior to the 1962 amendment to article VI (§ 7) of the New York State Constitution, the Supreme Court historically had general common-law jurisdiction plus jurisdiction over all causes of action subsequently created by the Legislature *except where the Legislature specifically proscribed* the Supreme Court's jurisdiction *(see, Kagen v Kagen,* 21 NY2d 532, 536-538; *Matter of Seitz v Drogheo,* 21 NY2d 181). The 1962 amendment has no significance with respect to the issues here.

396 [members of the militia were not employees of the State within the meaning of the Workers' Compensation Law]). "Military efficiency demands that the services have a free hand in establishing age ceilings designed to ensure that the nation's soldiers, sailors, and airmen are young and fit enough to meet the challenges of military service" *(Kawitt v United States,* 842 F2d 951, 953-954).

In analogous cases involving Federal antidiscrimination statutes, the courts have declined to extend to members of the regular armed forces and the National Guard the protections afforded to employees in general under title VII of the Civil Rights Act of 1964 (42 USC § 2000e *et seq.)* and the Age Discrimination in Employment Act (hereinafter ADEA [29 USC § 621 *et seq.]; see, e.g., Roper v Department of Army,* 832 F2d 247; *Helm v State of Cal.,* 722 F2d 507; *Gonzalez v Department of Army,* 718 F2d 926; *Kawitt v United States,* 842 F2d 951, *supra).* "The courts have held that these Acts [title VII and the ADEA] do not apply to the military primarily because of a determination that, if Congress had intended to encroach upon the special status of the military in our system by extending these protections, it would have expressed its intention clearly" *(Frey v State of Cal.,* 982 F2d 399, 404, *cert denied,* 509 US 906).

I cannot agree, therefore, with my colleagues that the Supreme Court has subject matter jurisdiction to consider the plaintiff's claim under the Human Rights Law. Since the court is without jurisdiction to decide the plaintiff's claim, there is no need to reach the issue of whether Federal regulation of the National Guard has preempted application of the State's Human Rights Law to personnel criteria for the National Guard. If I were to reach this issue, I would agree with my colleagues that principles of Federal preemption preclude the plaintiff's claim under the Human Rights Law *(see, Hazelton v State Personnel Commn.,* 178 Wis 2d 776, 505 NW2d 793).

ROSENBLATT, J. P., and PIZZUTO, J., concur with GOLDSTEIN, J.; O'BRIEN, J., concurs in a separate opinion.

Ordered that the order is affirmed insofar as appealed from, with costs.