*267 OPINION OF THE COURT
Norman A. Mordue, J.
During 1994 and 1995, both parties were members of the 174th Fighter Wing, a military flying unit of the New York Air National Guard located at Hancock Field, Syracuse, New York. During these years, plaintiff held the rank of Captain and defendant held the higher rank of Major.
Plaintiff alleges in his verified complaint that defendant began a course of conduct that was offensive, inappropriate, rude and demeaning. Specifically, plaintiff contends that defendant touched his buttocks, grabbed hold of his buttocks, petted his buttocks, pinched his buttocks, rubbed his back, put her arm around him, grabbed hold of his shoulders, rubbed him, called him names, and engaged in other inappropriate and unwanted touching.
Further, plaintiff contends that he attempted to speak with his superior officers about defendant’s conduct and asked that something be done to prevent defendant’s conduct toward plaintiff in the future. According to plaintiff, defendant then took retaliatory actions which led to a hearing, after which plaintiff was disciplined, lost income, was relieved of his position of Squadron Scheduling Officer, and was grounded.
Plaintiff seeks damages from defendant for assault and/or attempted assault, battery and/or attempted battery, harassment, and intentional infliction of emotional harm. He claims defendant’s actions were intentional, willful, unwarranted and without any just cause or provocation.
Defendant seeks summary judgment dismissing the complaint pursuant to CPLR 3211 (a) (2), (3) and (7), contending that the court has no jurisdiction over the subject matter of the causes of action, plaintiff has no legal capacity to sue, and the complaint fails to state a cause of action. Defendant also seeks treble costs of this action pursuant to section 235 of the Military Law.
Plaintiff opposes defendant’s motion and has brought a cross motion seeking dismissal of defendant’s affirmative defenses, summary judgment on liability, and an order requiring the New York State Attorney-General to withdraw as counsel for defendant. The court will first address the issue of the propriety of the Attorney-General acting as defendant’s counsel.
plaintiff’s motion to disqualify attorney-general
Plaintiff seeks to prevent the Attorney-General from representing defendant in this action on several grounds. First, *268 plaintiff alleges that defendant failed to comply with subdivision (4) of section 17 of the Public Officers Law by not delivering to the Attorney-General a copy of the summons and complaint within five days of being served with such documents.
Second, plaintiff contends that the Attorney-General is under no obligation to represent a public employee who has been sued in intentional tort for actions not incident to employment or outside the scope of employment. Plaintiff argues that there is no legal justification for the use of public funds to defend an individual accused of an intentional tort.
Third, plaintiff maintains that the Attorney-General has a conflict of interest because he is representing plaintiff as well as the New York State Division of Military and Naval Affairs (hereinafter DMNA). Plaintiff contends that he was adversely affected by the DMNA’s actions following an investigation that defendant initiated and that the Inspector General’s office is currently determining the appropriateness of the manner in which the DMNA handled that investigation. As a result, the DMNA may be placed in a position where it must bring a charge of perjury against defendant. If so, the dual representation of defendant and the DMNA is inappropriate because defendant and the DMNA have competing and adverse interests. At the very least, plaintiff argues, there is an appearance of impropriety.
In response, defendant’s counsel submits that defendant timely provided the Attorney-General with a copy of the summons and complaint. Further, he contends that National Guard personnel are entitled to representation by the Attorney-General when the incidents giving rise to the claim result from the service member’s activity while on orders pursuant to title 32 of the United States Code. Defendant’s attorney also alleges that the nature of the allegations are well within the purview of the representation and indemnification provisions of the law. Finally, he argues that denial of representation can only be challenged by the public employee seeking representation. Defendant’s attorney maintains that there is no process by which a third party can challenge a determination that representation is proper.
This court agrees with defendant’s position. Of primary importance is the fact that plaintiff lacks standing to object to the representation of defendant by the Attorney-General. If the Attorney-General had refused to represent defendant, her remedy would have been to commence a CPLR article 78 proceeding against the Attorney-General. (See, Matter of Wil *269 liams v City of New York, 64 NY2d 800 [1985].) However, an article 78 proceeding can only be commenced by an aggrieved party. " '[A]ggrievement warranting judicial review requires a threshold showing that a person has been adversely affected by the activities of defendants (or respondents), or — put another way — that [he] has sustained special damage, different in kind and degree from the community generally’ ”. (Matter of Mobil Oil Corp. v Syracuse Indus. Dev. Agency, 76 NY2d 428, 433, quoting Matter of Sun-Brite Car Wash v Board of Zoning & Appeals, 69 NY2d 406, 413.) Plaintiff has failed to demonstrate that he has been aggrieved in any way different in kind and degree from the community generally by the Attorney-General’s representation of defendant. Accordingly, plaintiff would lack standing to commence such a proceeding had he attempted to do so.
Assuming arguendo that plaintiff did have standing to contest the Attorney-General’s representation of defendant, plaintiff’s cross motion would still fail on the merits. Public Officers Law § 17 (4) provides that the summons and complaint be delivered to the Attorney-General within five days of service. The Attorney-General has acknowledged receiving the documents in a timely fashion.
Further, Public Officers Law § 17 (2) (a) provides, in relevant part, that "the state shall provide for the defense of the employee in any civil action or proceeding in any state * * * court arising out of any alleged act or omission which occurred or is alleged in the complaint to have occurred while the employee was acting within the scope of his public employment or duties”. "Like an insurance company, the only time the Attorney-General can deny a defense based upon his determination that the employee was acting outside the scope of employment is when the facts are so clear-cut that reasonable minds could reach no other conclusion.” (Mathis v State of New York, 140 Misc 2d 333, 339.)
The Attorney-General must perform a two-part test to determine whether he is authorized to provide a defense. (Matter of Sharrow v State of New York, 216 AD2d 844 [3d Dept 1995].) First, he must analyze the complaint to determine whether it alleges that the employee was acting within the scope of his or her employment. Second, failing such an allegation in the complaint, he must look behind the pleadings to determine whether the facts are so clear-cut that reasonable minds could reach no other conclusion than that she was acting outside the scope of her employment at the time of the alleged tortious acts. (Supra.)
*270 Although in this case there is no specific allegation in the complaint that defendant was acting within the scope of her employment, a fair reading of the allegations in the complaint leads this court to believe that the acts complained of were all alleged to have taken place while defendant was acting in her capacity as a Major in the United States Air Force. The determination of the Attorney-General that he is required to provide a defense can only be set aside "if it lacks a factual basis, and in that sense, is arbitrary and capricious”. (Williams v City of New York, 64 NY2d, at 802, supra.) Here, that determination does not lack a factual basis. Although the complaint alleges that defendant harassed plaintiff, it also alleges that defendant caused a hearing to be held, the result of which was disciplinary actions taken against plaintiff, not defendant. Faced with these allegations, the Attorney-General acted well within his discretion when he determined that defendant was not clearly acting outside of the scope of her employment and was entitled to a defense.
Finally, the court finds that plaintiff has failed to demonstrate that the Attorney-General has a conflict of interest. Plaintiff’s allegation that the Attorney-General has a conflict of interest is based upon his theory that the Attorney-General could possibly represent both defendant and the DMNA. This theory, however, is based upon pure speculation. Further, the court finds that there is no appearance of impropriety in the Attorney-General’s representation of defendant. Therefore, plaintiff’s cross motion to require the Attorney-General to withdraw is denied.
defendant’s motion to dismiss complaint
Because defendant seeks to dismiss plaintiff’s complaint pursuant to CPLR 3211, the court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party. (Lupinski v Village of Ilion, 59 AD2d 1050; Paul v Hogan, 56 AD2d 723.) For defendant to succeed on a motion to dismiss, she must demonstrate conclusively that plaintiff has no cause of action. (Rovello v Orofino Realty Co., 40 NY2d 633, 636.)
Defendant contends that plaintiff’s causes of action are barred under the doctrine of intra-military immunity. This doctrine bars actions against the Government by military personnel for injuries sustained that "arise out of or are in the course of activity incident to service.” (Feres v United States, 340 US 135, 146 [1950].)
*271 The doctrine has its roots in Brooks v United States (337 US 49), a case decided by the Supreme Court in 1949, one year before Feres (supra) was decided. In Brooks, two brothers were in the military, out on furlough, driving with their civilian father along a public highway, when their vehicle was struck by a civilian employee of the military. One brother was killed and the other was injured. The Government was sued under the Federal Tort Claims Act (hereinafter FTCA). The Supreme Court determined that it was "dealing with an accident which had nothing to do with the Brooks’ army careers, injuries not caused by their service except in the sense that all human events depend upon what has already transpired. Were the accident incident to the Brooks’ service, a wholly different case would be presented.” (Supra, at 52.) Accordingly, it allowed the lawsuit to proceed against the Government.
The next year, "a wholly different case” was presented in the case of Feres v United States (340 US 135, supra). Feres involved three separate actions. In the first action, the executrix of Rudolph J. Feres sued the United States to recover for Feres’ injuries and wrongful death after Feres perished by fire in the barracks at Pine Camp, New York, while on active duty. Plaintiffs in the second and third actions each sought damages for alleged medical malpractice occurring during surgery while the servicemember was on active duty. "The common fact underlying the three cases is that each claimant, while on active duty and not on furlough, sustained injury due to negligence of others in the armed forces.” (Supra, at 138.) The Court determined that the injury to each servicemember was incident to service and that the Government was immune from suit in each of these actions.
Defendant contends that the injury in the case at bar was incident to plaintiff’s service. As such, she argues that this court must dismiss this case after applying Feres (supra). In response, plaintiff maintains that Feres is not a universal bar to suit in every circumstance in which one uniformed member of the National Guard sues another member and that the military status of the parties is not determinative of whether the Feres doctrine is a bar to the lawsuit. Rather, he argues, the court must determine whether the conduct alleged is incident to a military function.
Although this court agrees that Feres (supra) is not a universal bar to all lawsuits between servicemembers, "[r]eview of * * * Supreme Court precedents makes it clear that in recent years the Court has embarked on a course dedicated to
*272 broadening the Feres doctrine to encompass, at a minimum, all injuries suffered by military personnel that are even remotely related to the individual’s status as a member of the military, without regard to the location of the event, the status (military or civilian) of the tortfeasor, or any nexus between the injury-producing event and the essential defense / combat purpose of the military activity from which it arose.” (Major v United States, 835 F2d 641, 644-645 [6th Cir 1987], cert denied 487 US 1218.) In this regard, the Feres doctrine has been extended to apply to lawsuits by servicemembers against each other[1] and has been extended to prohibit suits for intentional torts.[2]
Although the Feres doctrine has been much criticized by many of the Federal District and Circuit Courts of Appeals, it is still viable today and must be followed.[3] The Second Circuit Court of Appeals has stated that it "would be less than candid if [it] did not admit that the Feres doctrine has gone off in so many different directions that it is difficult to know precisely what the doctrine means today.” (Taber v Maine, 67 F3d 1029, 1032 [2d Cir 1995], supra.)
Plaintiff argues that in the instant case his injuries did not arise out of or in the course of military duty. He contends that "[c]learly, no military function was being performed by the Defendant when she chose to fondle and stroke the Plaintiff’s buttocks, chose to use humiliating and sexually charged state- *273 merits to him, and otherwise committed tortious acts.” (Mem of Law in Opposition to Defendant’s Motion to Dismiss, at 11.)
Plaintiff, however, misses the entire import of the phrase "incident to service.” The Supreme Court and the majority of lower courts that have discussed this doctrine have looked to plaintiff’s status, not defendant’s status, in determining whether an activity is incident to service.[4] "Whether Feres immunity exists does not turn on the constitutionality of * * * a defendant’s actions.” (Jackson v Brigle, 17 F3d 280, 284 [9th Cir 1994], cert denied 512 US 1241 [emphasis added].) "Al *274 though 'neither the [FTCA] nor the opinions of the Supreme Court have indicated definitively the full meaning of the phrase "incident to service,” ’ see 1 Jayson, Handling Federal Tort Claims § 155.01, at 5-66 (1990), courts have interpreted the phrase broadly and found it applicable to any loss or injury occurring under circumstances rationally connected to a serviceman’s status in the armed services * * * Thus, Feres has not been limited to those cases in which servicemen have been injured in the course of actual military operations.” (Veloz Gertrudis v United States, 768 F Supp 38, 40 [ED NY 1991], affd 953 F2d 636, cert denied 504 US 911 [plaintiff injured in illegal hazing incident].) In fact, viewing "the continuum [of duty status from actual active duty at one extreme to discharge at the other] in light of the best rationale for the Feres doctrine — that the propriety of military decisions and actions are committed to the military and not to the courts — it becomes apparent that injuries are 'incident to service’ if all inquiry into the Government’s liability for those injuries would require civilian courts to second-guess military decisionmaking.” (Miller v United States, 42 F3d 297, 304, citing Stencel Aero Eng’g Corp. v United States, 431 US 666, 671-672.)
"The test has been broadly construed to immunize the United States and members of the military from any suit which may 'intrude in military affairs,’ 'second-guess[ ] military decisions,’ or 'impair[ ] military discipline.’ ” (Miller v United States, 42 F3d 297, 302, supra, citing Jackson v Brigle, 17 F3d 280, supra; Stauber v Cline, 837 F2d 395, 398 [9th Cir 1988], cert denied 488 US 817, supra.) The construction has been so broad that "practically any suit that 'implicates * * * military judgments and decisions’ * * * runs the risk of colliding with Feres.” (Persons v United States, 925 F2d 292, 295 [9th Cir 1991], supra, quoting United States v Johnson, 481 US 681, 691.)
Clearly in this case, military judgments and decisions are implicated. Plaintiff was on active duty, on base,[5] at the time of the alleged torts. A military hearing has already taken place concerning these same allegations. In fact, "the DMNA ha[d] already taken what they believe[d] to be 'adverse’ action against [defendant] regarding her inappropriate touching of *275 [plaintiff]”. (Affidavit of M. Joanne Van Dyke, Esq., dated Mar. 15, 1996, at 14.) This court would be required to intrude in military affairs, second-guess military decisions or impair military discipline were it to entertain plaintiff’s lawsuit. The same officers who testified before the military tribunal would be compelled to testify in State court. The risk of undermining the military’s judgment is great under these circumstances. (See, Stencel Aero Eng’g Corp. v United States, 431 US 666, 673 [1977], supra [court proceeding would "involve second-guessing military orders, and would often require members of the Armed Services to testify in court as to each other’s decisions and actions”]; see also, Kolomick v New York Air Natl. Guard, 219 AD2d 367 [2d Dept 1996] [O’Brien, J., concurring].) Accordingly, the court is constrained to dismiss plaintiff’s lawsuit based upon the previously cited case law.
In light of this court’s decision on defendant’s motion, plaintiff’s cross motion seeking dismissal of defendant’s affirmative defenses and summary judgment on liability is denied. Defendant’s motion to dismiss for plaintiff’s failure to exhaust his administrative remedies is denied as moot. Defendant’s motion for treble costs of this action pursuant to section 235 of the Military Law is denied.

. See, Watson v Clark, 716 F Supp 1354 (D Nev 1989), affd 909 F2d 1490; Stauber v Cline, 837 F2d 395 (9th Cir 1988), cert denied 488 US 817; Brown v United States, 739 F2d 362 (8th Cir 1984), cert denied 473 US 904; Hefley v Textron, Inc., 713 F2d 1487 (10th Cir 1983); Hass v United States, 518 F2d 1138 (4th Cir 1975); Rotko v Abrams, 338 F Supp 46 (D Conn 1971), affd 455 F2d 992; Bailey v Van Buskirk, 345 F2d 298 (9th Cir 1965), cert denied 383 US 948.

. See, Stubbs v United States, 744 F2d 58 (8th Cir 1984), cert denied 471 US 1053 (sexual harassment of servicemember which led to her suicide); Jaffee v United States, 663 F2d 1226, 1234-1235 (3d Cir 1981), cert denied 456 US 972 (exposing servicemember to radiation); Bois v Marsh, 801 F2d 462, 471 (DC Cir 1986) (intentional infliction of emotional distress or interference with prospective advantage); Stauber v Cline, 837 F2d 395, 398 (9th Cir 1988), cert denied 488 US 817 (1988), supra (intentional infliction of emotional distress and libel); Satterfield v United States, 788 F2d 395 (6th Cir 1986) (beating death of an off-duty serviceman by three of his fellow enlistees); Lewis v United States, 663 F2d 889 (9th Cir 1981), cert denied 457 US 1133 (1982) (allegation that death intentionally caused).

. See, e.g., Taber v Maine, 67 F3d 1029, 1032 (2d Cir 1995); Verma v United States, 19 F3d 646 (DC Cir 1994); Kelly v Panama Canal Commn., 26 F3d 597 (5th Cir 1994); Stephenson v Stone, 21 F3d 159 (7th Cir 1994); Hata v United States, 23 F3d 230 (9th Cir 1994); Hinkie v United States, 715 F2d 96, 97 (3d Cir 1983), cert denied 465 US 1023; Scales v United States, 685 F2d 970, 974 (5th Cir 1982), cert denied 460 US 1082.

. Almost every Circuit Court of Appeals decision has applied the "incident to service” test to plaintiffs status at the time of the injury. (See, e.g. United States v Stanley, 483 US 669 [1987]; Schoemer v United States, 59 F3d 26 [5th Cir 1995], cert denied — US —, 116 S Ct 519, 133 L Ed 2d 427 [serviceman’s duty status often treated as most important factor]; Stephenson v Stone, 21 F3d 159 [7th Cir 1994], supra [servicemember’s injury incident to service whenever injury incurred while individual on active duty or subject to military discipline]; Quintana v United States, 997 F2d 711 [10th Cir 1993] [servicemember entitled to surgery due to military status and surgery performed by military servicemembers in military hospital]; Romero v United States, 954 F2d 223 [4th Cir 1992] [claims brought by military personnel for injuries sustained while on active duty barred]; Persons v United States, 925 F2d 292 [9th Cir 1991] [practically any suit implicating military judgments and decisions runs risk of colliding with Feres, supra]; Kitowski v United States, 931 F2d 1526 [11th Cir 1991], cert denied 502 US 938 [decedent on active duty participating in training exercises at time fatal injury was inflicted and thus injuries incident to his duties]; Morey v United States, 903 F2d 880 [1st Cir 1990] [injury to member of Armed Forces, on active duty, occurring at military base is injury arising out of or in, course of activity incident to service]; Woodside v United States, 606 F2d 134 [6th Cir 1979], cert denied 445 US 904 [servicemember on leave and not subject to military discipline but link between military and flight club sufficient to bring servicemember’s flight instructions within realm of activities incident to military service].)
Plaintiff cites McGowan v Scoggins (890 F2d 128 [9th Cir 1989]) and Lutz v Secretary of Air Force (944 F2d 1477 [9th Cir 1991]) for the proposition that the court must examine defendant’s conduct and determine whether that conduct was incident to service. However, McGowan involved a former member of the military who was on a military base to run a personal errand. Because McGowan was not in the military, the "incident to service” test did not apply to him.
Lutz (supra) clearly evinces the minority view. In fact, even though Lutz looked to defendant’s conduct and status rather than plaintiffs conduct and status, later decisions from that same Circuit Court of Appeals have looked to plaintiffs conduct and status. (See, Hata v United States, 23 F3d 230 [9th Cir 1994], supra [barring servicemember’s claim, where it arose incident to his service]; Green v Hall, 8 F3d 695 [9th Cir 1993], cert denied 513 US 809 [barring servicemember’s claim where it arose off-base on a distinctly nonmilitary trip]; Humphrey v United States, 1993 US App LEXIS 19888, 1993 WL 280220 [9th Cir, July 23, 1993] [accident arose out of an activity incident to servicemember’s military service].)

. Plaintiff alleges that the activities occurred both on- and off-base. However, this distinction is irrelevant where there is a continuing course of conduct such as in this case. (See, Stauber v Cline, 837 F2d 395 [9th Cir 1988], supra.)